### SMITH *et al. v.* COLLINS *et al.*

The rule in Shelley's case does not apply unless an estate is limited to the heirs, general or special, of the same person to whom a preceding freehold estate is given or granted.   Hence, the rule does not apply, so far as A. is concerned, to a conveyance in trust for the use of A. during her life, and at her death the property to vest in the children born of her body, to them and *their heirs* forever; and if A. should die without any children so born, or if her children should all die intestate and without issue after her death, then the property to be sold and one half the proceeds to revert to the donor, and the other half to go to a named person, his heirs and assigns forever.   The heirs of A., as such, are neither mentioned nor contemplated.   Her children's heirs might be different persons from her own heirs.   Certainly, her children's heirs general would be a different species of heirs from her heirs special.   Her children took as purchasers, and could not consistently with the terms of the conveyance take by limitation or inheritance.   The deed now under construction was made in the year 1844.

August 27, 1892.

Construction of deed.    Estate.    Rule in Shelley's case.    Before Judge MILLER.    Bibb superior court. April term, 1891.

LANIER, ANDERSON & ANDERSON and GUSTIN, GUERRY & HALL, for plaintiffs.

HILL, HARRIS & BIRCH, DESSAU & BARTLETT and TRACY BAXTER, for defendants.

BLECKLEY, Chief Justice.

The rule in Shelley's case, stated as briefly as possible, is to this effect: Where by the same conveyance which passes an estate of freehold from one person to another, the heirs of the latter are appointed to take as heirs an estate of inheritance in the same property, they can take only by inheritance and will not take as purchasers. Where the rule applies, a freehold of inheritance vests in the first taker, notwithstanding the words describing it, apart from those appointing his heirs to succeed him in ownership, would create only a freehold not of inheritance. In its substance the rule is not arbitrary, but logical and apparently necessary in any system of law which is self-consistent; for the distinction between descent and purchase is radical and fundamental; and while a group of individuals, though they be heirs of another, may take by purchase the same as those who are not his heirs, yet they cannot *as heirs* take otherwise than by descent; and to take by descent at all, they must take from him whose heirs they are, and not from him who conveyed the property and nominated them to succeed in its ownership. It may be that the rule has often been misapplied, for it is a rule of law and not a rule of construction. It is not available to ascertain intention, but only to fix the consequences of a given intention after it has been ascertained. Possibly it is in rare instances only that those moulding wills and deeds in a way to import a conveyance for life to a specified person and a remainder to his heirs after his death, intend that the heirs shall take as heirs, yet where this intention really exists and has been ascertained, the rule in Shelley's case executes that intention

precisely, and cannot be charged with thwarting or defeating it. The rule does, however, defeat incidentally the intention of limiting the first freehold estate to the life of the freeholder, for that intention is inconsistent with the transmission of the estate to his heirs as such. Both intentions, the first that the freeholder shall have an estate not of inheritance, and the second that his heirs shall succeed to it as heirs, cannot be executed. The law, as embodied in the rule we are discussing, determines that the latter intention shall be preferred; from whence it results that the former must be sacrificed. And surely it is better, not only for the ancestor but for the heirs also, that they should have the chance of inheriting the property, rather than that they should have no chance at all ever to enjoy it. If, in the nature of things, they cannot take as purchasers, the best that can be done for them is to let them take by descent should the inheritance not be legally cut off by alienation or otherwise in the lifetime of the ancestor. The reproach which has been cast upon the rule is attributable really to the misconstruction of conveyances for which the rule, properly understood and properly used, is in no wise responsible. In order not only to guard effectually against such misconstruction but to adopt the popular sense of certain terms, the code of Georgia has ordained that "Limitations over to heirs, heirs of the body, lineal heirs, lawful heirs, issue, or words of similar import, shall be held to mean children, whether the parents be alive or dead; and under such words, children and the descendants of deceased children, by representation, in being at the time of the vesting of the estate, shall take." Code, §2249. This is a virtual abolition of the rule in Shelley's case as to limitations over in conveyances executed in this State since the adoption of the code. But the abolition results only incidentally from a change in the rules of construction

which previously obtained. The rule itself in Shelley's case is left intact, but the construction which the code dictates leaves, in the instances specified, nothing on which it can operate in practice, for the word "heirs" and all equivalent terms are conclusively presumed to mean, not heirs at all in the technical sense, but children.

The deed of conveyance involved in the present case was executed in the year 1844, long before the code was adopted. Consequently it is governed, not by the code, but by the prior law. It is a deed of gift made by James Smith, whereby, in consideration of love and affection for his daughter, Eliza C. Collins, wife of Robert Collins, he conveyed certain premises in the city of Macon to Robert A. Smith "as trustee for the use and benefit of his sister, the said Eliza C. Collins, for and during her natural life . . . to the separate use and benefit of her the said Eliza Collins for and during her natural life, and at her death to vest in the children born of her body, and to them and their heirs forever; but in the event of the death of said Eliza C. Collins without any children so born of her body as aforesaid, or that her child or children may all die intestate and without issue after the death of said Eliza C. Collins, then said land and improvements to be sold, and one half of the net amount of sale to vest in and be the property of said Robert Collins and his heirs and assigns, and the other half to revert to and become the property of said James Smith and his heirs and assigns thenceforth forever. . . . To have and to hold the two lots of land before described to the separate use and benefit and behoof of said Eliza C. Collins during her life, and then to the child or children living at her death born of her body, and not subject to any debt or incumbrance of her said husband, said Robert Collins, nor any other person whatever, being for her personal benefit during her natural life, and then to vest in her

child or children living at her death and their heirs for-
ever, free and clear from myself, the said James Smith,
my heirs, executors and administrators."

The contention is that under the rule in Shelley's
case, Mrs. Collins took not merely an estate for her
own life, but an estate tail which our statute converts
into a fee simple.  A conclusive answer to this conten-
tion, not to mention any other that might have been
given, is that the heirs of Mrs. Collins, either general
or special, are nowhere named or referred to in this con-
veyance.  Those appointed to take first in remainder
are children, born of her body and living at the time of
her death; in other words, such of her own children as
might survive her.  This is the sense and meaning of
the instrument, construing together all it says on the
subject.  No estate tail in Mrs. Collins is or ever could
be created by raising such a remainder as this, for two
reasons: the first is, that under the rule in Wilde's case,
a gift to a woman expressly for life, and at her death to
her children generally, would not create an estate tail;
and the second is, that here the gift in remainder is not
to children generally, but to those living at the mother's
death.  That the heirs of these children are mentioned,
the remainder being given not to the children only but
to them and *their heirs*, has no force upon the life-estate
expressly limited to Mrs. Collins.  Her children's heirs
might be very different persons from her own heirs, and
certainly their heirs general would be a different species
of heirs from her heirs special.  An estate tail in one
person which must descend to the heirs general of an-
other, has never been heard of.  The children being the
root of inheritance absolutely excludes the mother as
the root contemplated.

The contingent limitation over as to one half of the
property, and the contingent reversion as to the other
half, the contingencies specified being the death of Mrs.

Collins without children, or the subsequeut death of all her children intestate and without issue, might give rise to a question as to the nature of the estate which the children acquired in the remainder, but these provisions, in view of others contained in the deed, cannot be construed as adapted to create an estate tail in Mrs. Collins, or as enlarging her express life-estate into a fee of any kind under the rule in Shelley's case. It is an indispensable part of that rule that the heirs designated to take the inheritance shall be the heirs, general or special, of the same person to whom the freehold estate to be affected is conveyed. This deed does not concern itself, either expressly or by implication, with the heirs of Mrs. Collins. It is alike indifferent to her heirs general and to the heirs of her body.        *Judgment affirmed.*