## CHARLES A. WESCOTT, *et al.*, Appellants, v. T. BINFORD, *et al.*

**Wills:** INTENTION: *Rule in Shelley's Case.* The rule in *Shelley's Case*, if it be in force in the state of Iowa, cannot defeat the intent of a testator as expr ssed by the language of the will.

SAME In a devise of land to one "to hold the s me during the term of his natural life," and giving him the use, rents, and profits of it during such time, but providing that he should "have no power to convey or dispose of the same" for a period longer than his life, and that at his death it should descend to his heirs, the word "heirs" will not be given its technical effect, and the rule in *Shelley's Case* will not apply, as it was testator's clear intention to create a life estate only.

SAME. In such devise, the fact that testator is presumed to have intended a devise of all his interest in the property, and that the heirs of the devisee could not be definite y known until his death, would not create in him a larger estate than the testator intended him to have.

*Appeal from Marshall District Court.*—HON. B. P. BIRD-
SALL, Judge.

SATURDAY, FEBRUARY 5, 1898.

ACTION at law to recover the possession of real prop-
erty and damages for its detention. A demurrer to the
petition was sustained, and, the plaintiffs refusing to
plead further, judgment was rendered in favor of the
defendants for costs. The plaintiffs appeal.—*Reversed.*

*R. W. Hargrave* and *Struble & Stiger* for appellants.

*Binford & Snelling* and *J. H. Preston* for appel-
lees.

ROBINSON, J.—The material facts admitted by the
demurrer are substantially as follows: In October,
1865, John Wescott, a resident of Marshall county, died
testate, seized, in fee simple, of real property in the
town of Marshall, in Marshall county. The will of the
decedent was admitted to probate, and contains the
following provisions: "*   *   * I do give, devise, and
bequeath unto my wife, Hannah Westcott, the real
estate situated in said county of Marshall and state of
Iowa, described as follows, to-wit: Lots numbered four
and five, block numbered nineteen, and lots numbered
seven and nine in block numbered six, all in the town of
Marshall;   *   *   * to have and to hold said real
estate in her own right. I do further give and bequeath
unto my wife, Hannah Westcott, the real estate situ-
ated in said county of Marshall and state of Iowa
described as follows: Lots numbered seven and eight,
in block eleven, in the town of Marshall; to have and to
hold the same during the term of her natural life, and at
her decease to be divided among my children as follows:
*   *   * . The east one-third of said lot [seven, in block

eleven] I do give and bequeath to my son William Edwin Westcott, to have and to become possessed of the same at the death of my said wife, and to hold the same during the term of his natural life." The west one-third of the same lot was devised to Mrs. Scott, the middle one-third to Mrs. Gibson, and separate parts of lot 8, in block 11, were devised to Mrs. Hardenberg, Joseph Leander Westcott, and Charles Alfred Westcott, on the same terms and conditions as those which applied to the devise to William Edwin Wescott. All of the devisees named, excepting the wife, were children of the testator. The last paragraph of the will is as follows: "My said children are to have the use, rents, and profits of their portion of said lots number seven and eight, in block numbered eleven, in the town of Marshall, respectively, during the term of their natural lives. They are to have no power to convey or dispose of the same, their respective portions, for a longer period than during their natural lives, respectively. At the death of my children aforesaid, their respective portions of said lots numbered seven and eight descend to their heirs, respectively, said heirs to have absolute title to their respective portions." In August, 1875, William Edwin Wescott and his wife executed to Thaddeus Binford a deed of special warranty, which purported to convey the interest of Wescott in the east one-third of lot 7, in block 11, in words as follows: "conveying hereby all the right and title I have in the above property by virtue of the last will and testament of John Wescott, deceased." William Edwin Wescott died in January, 1892. The plaintiffs are his children, and the husbands and wives of the children who are married. The children claim to own, and in this action seek to recover, the part of the lot conveyed by their father to Binford. The defendants are Binford and W. E. Snelling and their wives. Binford and Snelling claim the property in question through the deed of Wescott

to Binford, and are in possession of it. The grounds of the demurrer are, in substance, that the petition does not state facts which show that the plaintiffs are entitled to relief, for the reason that it shows that William Edwin Wescott obtained a title in fee simple to the property in question through the will of his father, and that his title was transferred by his deed to Binford.

I. The question we are required to determine involves the consideration of the rule in *Shelley's Case*. A statement of that rule, found in 4 Kent, Commentaries, 215, and several times quoted by this court, is as follows: "When a person takes an estate of freehold, legally or equitably, under a deed, will, or other writing, and in the same instrument there is a limitation by way of remainder, either with or without the interposition of another estate, of an interest of the same legal or equitable quality, to his heirs, or heirs of his body, as a class of persons to take in succession, from generation to generation, the limitation to the heirs entitles the ancestor to the whole estate." See *Pierno v.s Lane*, 60 Iowa, 61; *Zavitz v. Preston*, 96 Iowa, 52. The rule is of common-law origin, and has been the subject of much controversy. Where the rule is enforced in all its rigor, it is held to be a rule of property, and not of construction, and a grant or devise to a person named, "and his heirs," would be subject to the rule, and no declaration, however unequivocal, that the ancestor should have the estate for life only, or that his heirs should take as purchasers, would be effective. The particular intent thus clearly stated would be compelled to yield to the intent expressed by the use of words havng a technical meaning. *Trumbull v. Trumbull*, 149 Mass. 200. It was said in *Daniel v. Whartenby*, 17 Wall. 639, that where the rule is in force, "if the testator has used technical language which brings the case within the rule, a declaration, however positive, that the rule shall not

apply, or that the estate of the ancestors shall not continue beyond the primary express limitation, or that his heirs shall take by purchase, and not by descent, will be unavailing to exclude the rule, and cannot affect the result." In *Silva v. Hopkinson*, 158 Ill. 386 (41 N. E. Rep 1013), it is said, with reference to the application of the rule: "No principle of law is better established than that, although the testator did intend the first taker to have but a life estate, yet, if the technical words are used, that intention, be it ever so clearly expressed, will be defeated, and the first devisee allowed to take the whole estate. * * * The only method in which an instrument employing the word 'heirs' can be shown not to be within the rule is by showing that the word was not employed in its strict legal sense. * * * It is well settled that the words must be given their legal effect, even though the subsequent words are inconsistent therewith, unless they make it clear that they were not so used." See, also, *Conger v. Lowe*, 124 Ind. 368 (24 N. E. Rep. 889); *Kleppner v. Laverty*, 70 Pa. St. 73; 2 Washburn, Real Property, *272; 1 Jones, Real Property, section 601 *et seq.;* Hay's Principles for Express Disposition of Real Property, 96; 22 Am. & Eng. Enc. Law, 495, and note.

The rule was not designed to defeat the intention of the grantor or testator, but gave to certain words, as "heirs," such force and effect that when used they were conclusively presumed to show an intent to vest the estate in the ancestor, in fee. Theoretically, the rule was not applied to ascertain the intent of the grantor or testator, but to declare its effect when ascertained. *Smith v. Collins*, 90 Ga. 411 (17 S. E. Rep. 1013); *Allen v. Craft*, 109 Ind. 476 (58 Am. Rep. 425; 9 N. E. Rep. 919); 22 Am. & Eng. Enc. Law, 495. The practical operation of the rule has been such, however, that it has not met with general favor in this country. It has never been adopted in some states, and in others, where it was

once in force, it has been abolished by statute. At the present time it is in force in but few of the states. 1 Jones, Real Property, 602, and notes. *Daniel v. Whartenby, supra.* It has been recognized to some extent in this state, but has never been formally adopted or declared to be in force. It was referred to in *Zuver v. Lyons*, 40 Iowa, 513, but held not to apply to the matter there in controversy. In *Hanna v. Hawes*, 45 Iowa, 441, it was said: "Conceding the rule in *Shelley's Case* to be the law in this state, it is not applicable. It is evident that the concession stated was for the purposes of that case only, and was not intended to be of general application. In *Slemmer v. Crampton*, 50 Iowa, 302, the rule was again referred to, but this court held, in effect, that the devise involved in that case was not within the rule. In *Kiene v. Gmehle*, 85 Iowa, 313, the rule was discussed, but not found to apply in that case. In *Zavitz v. Preston*, 96 Iowa, 52,—the latest case decided by this court, in which the rule was considered,—it was said: "Whether the rule in *Shelley's Case* is in force in this state we need not determine." Two cases have been decided by this court, in which the rule was applied. In the first of these (*Pierson v. Lane*, 60 Iowa, 60), it was held that a conveyance of real estate to "Minerva Pierson, and the heirs of her body, begotten by her present husband," vested in Mrs. Pierson the title in fee. Whether the rule in *Shelley's Case* was in force in this state was a mooted question, but the discussion turned upon the statute *de donis* (13 Edwards, I Chancery, 1), with the conclusion that it was not in force as a part of the common law of this state. It was held that the conveyance to Mrs. Pierson vested in her the title in fee simple, and it is fair to say that the holding was based upon the rule in *Shelley's Case*, although no statement to that effect was made. The second case in which that rule was applied is *Broliar v. Marquis*, 80 Iowa, 49, which involved a conveyance

by John Marquis to "Annie Marquis and her children and joint heirs with her and myself and Mercelly Marquis and Ella Marquis." It was conceded by the parties in that case that under the holding in *Pierson v. Lane, supra,* and *Case v. Dwire,* 60 Iowa, 442, the children of Annie Marquis took nothing by the conveyance. Whether the concession thus made was well founded, or whether the rule in *Shelley's Case* was in force in this state, was not discussed nor decided.

The decisions of this court to which we have referred comprise all the cases, so far as we are advised, in which this court has considered the rule in question, and it cannot be said that they show that it has been adopted or should be enforced in this state. The most that can be said of the recognition of the rule by this court is that in the cases of *Pierson v. Lane* and *Broliar v. Marquis, supra,* it was assumed to be in force. Whether the decisions in those cases might not well have been placed on other grounds than the rule in *Shelley's Case,* and whether the concession made in the case last named was well founded, we need not determine. It should be noticed, however, that both cases involved deeds of conveyance of real property, and not wills.

A material distinction between wills and deeds of conveyance, in the application of the rule, has been observed by the authorities. It is said of the rule in 4 Kent, Commentaries, *216, that "there is more latitude of construction allowed in the case of wills, in furtherance of the testator's intention; and the rule seems to have been considered as of more absolute control in its application to deeds." In *Ridgeway v. Lanphere,* 99 Ind. 253, it was said: "The rule in *Shelley's Case,* 1 Coke, 88, is the law in this state, and, in all cases where the facts make it applicable, we must enforce it, although we may think there was not much reason for it at the time of its adoption and none at all under the existing system of tenures

and conveyances. But in accepting the rule we take it as construed and enforced by the courts which formulated and proclaimed it. Pressed by the evils wrought by the rule, and shocked by the great number of instances in which it operated to utterly overthrow the intention of the testator, these courts, centuries ago, affirmed that there existed an important difference between wills and deeds, and that the rule should not be so strictly enforced in the case of a will as in the case of a deed. It has long stood as the law that there is a material distinction between wills and deeds, and that the rule in *Shelley's Case* will not be allowed to override the manifest and clearly expressed intention of the testator, but that the intention will always be carried into effect if it can be ascertained. It is true, that, where the words used are such as to bring the case within the rule, it will be given full force and effect; but, where the context clearly shows that the testator annexed a different meaning, that meaning will be adopted, and the rule will not be allowed to frustrate his intention." See, also, *McIlhinny v. McIlhinny*, 137 Ind. 411 (37 N. E. Rep. 147). It was said in Jones Real Property, section 606, that, "as applied to wills, the rule is not allowed to override the manifest and clearly expressed intention of the testator, but the intention will always be carried into effect if it can be ascertained. * * * This distinction between deeds and wills in the application of the rule is in accordance with the general rule applicable to the construction of wills, that the intention of the testator shall, so far as possible, be observed."

The rule of interpretation of general application, which this court has invariably followed, is that the intention of the testator, when ascertained, and not in violation of law, must control. *Hopkins v. Grimes*, 14 Iowa, 77; *Benkert v. Jacoby*, 36 Iowa, 275; *Hanna v. Hawes*, 45 Iowa, 439; *Meek v. Briggs*, 87 Iowa, 616;

*Kiene v. Gmehle*, 85 Iowa, 316; *Zavitz v. Preston*, 96 Iowa, 52. In *Kiene v. Gmehle* it was said: "There are some respectable authorities that hold that the rule in *Shelley's Case* is independent of the intention of the donor or devisor; that it is absolute and imperative. Such application of the rule is not sanctioned by reason or the current of adjudicated cases in this country." The devise considered in that case was to the daughter of the testator, "for and during her lifetime, * * * and on her demise the said estate, both real and personal, shall descend to and vest in such heirs of her body begotten, in fee simple;" and it was held to give the daughter only a life estate in the real property of the testator. In *Zavitz v. Preston, supra*, a devise of real estate to a grandson "during his natural life," and at his death "to go to and be equally divided between, his lawful heirs and next of kin," was held to vest in the grandson a life estate, only. The rule in *Shelley's Case* was referred to, but, without determining that it was in force in this state, we said that "it certainly cannot be invoked to defeat the intent of the testator." In *Slemmer v. Crampton, supra*, a devise of land to Maria A. Avery, "to be used, occupied, and enjoyed by her after she becomes of the age of legal majority, during her natural life only," and, after her death, "to the heirs of her body," was held to vest in Maria A. Avery a life estate, only, notwithstanding the rule in *Shelley's Case*.

It is well know that wills are frequently drawn hurriedly, by persons not skilled in the use of technical terms, and words are often used in them in a sense not technically accurate. That is true of the word "heirs." *Furenes v. Severtson*, 102 Iowa, 322. To hold that when used it must be given a technical effect; that it must be taken as a word of limitation, and not of purchase, notwithstanding the fact that the context shows clearly that it was not used in a technical sense,—does not seem to us to be in harmony

with the best rules of interpretation, nor with the weight of authority, nor to be founded in reason, nor to be demanded by anything in the letter or spirit of the laws of this state, or the condition and policy of its people and their institutions. The conditions which the rule was originally designed to meet do not exist here, and to hold that it applies to the will under consideration would be to go counter to the rules of interpretation which this court has always applied to wills, to overrule in effect many cases which we have decided, and to some of which we have referred, and to establish a rule which has been so unjust in its operation as to be abandoned or modified by nearly all of the states in which it was once in force.

The will under consideration gave to William Edwin Wescott the property in controversy, "to hold the same during the term of his natural life," and provided that he should have the use, rents, and profits of it during that time. The will also provided that he should "have no power to convey or dispose of the same" for a longer period than during his natural life, and that at his death it should descend to his heirs. That the will was intended to create in the ancestor a life estate only, is too clear for controversy, and the fact that the testator will be presumed to have intended a devise of all his interest in the property, and the further fact that the heirs of the devisee could not be definitely known until his death, would not create in him a larger estate than the testator intended him to have. Upon his death the absolute title to the property vested in his heirs. The language of the will brings it within the rule of the cases of *Slemmer v. Crampton, Kiene v. Gmehle,* and *Zavitz v. Preston, supra,* to which we have referred. We do not find it necessary to determine whether the rule in *Shelley's Case* is in force, in this state, but hold that, if it be in force, it cannot defeat the intent of a testator, as expressed by

the language of his will. It follows from what we have said that the demurrer to the petition should have been overruled, and the judgment of the district court is REVERSED.