FRANK HARRIS et al., Appellees, v. JOHN A. BROWN et al., Appellants.

**DEEDS:** Life Estate (?) or Fee under Rule in Shelley's Case (?)  A
1  warranty deed which gives, sells, and conveys to a named grantee, *"during his natural lifetime, and at his decease to his children being his heirs,"* conveys a life estate to such named grantee, and not a fee under the Rule in Shelley's Case.

**ADVERSE POSSESSION:** Possession under Quitclaim from Life
2  Tenant.  *Naked possession,* for any length of time, under a chain of quitclaim deeds originating with one who owned a *life estate* only, will not ripen into absolute title by adverse possession— not even when attended by the payment of taxes, and the making of improvements which are perfectly consistent with the claim of a *life estate.*  So held where such chain of possession totaled some 40 years.

*Appeal from Jefferson District Court.*—C. W. VERMILION, Judge.

DECEMBER 14, 1918.

ACTION to construe a deed. Opinion states the facts.

Decree in the court below for the plaintiffs. Defendants appeal.—*Affirmed.*

*Leggett & McKemey,* for appellants.

*McNett & McNett* and *A. W. Enoch,* for appellees.

GAYNOR, J.—The plaintiffs are the children and grand-children of William R. Harris. Reuben Harris was the father of William R. On the 31st day of August, 1875, Reuben was the owner of the west half of the

1. DEEDS: life estate (?) or fee under Rule in Shelley's Case (?)

northeast quarter of Section 18, Township 72, Range 11, in Jefferson County, Iowa, and on that day, executed and delivered to his son, William R., a deed to said premises, in the following words and figures:

"That we, Reuben R. Harris and Mary Harris, of Jefferson County, and state of Iowa, in consideration of the natural love and affection which I have and bear for my son, William R. Harris, and divers other good causes in consideration me, the said Reuben Harris, hereunto moving, have given unto the said William R. Harris during his natural lifetime and at his decease to his children being his heirs of the county and state of Iowa, do hereby sell and convey unto the said William R. Harris and his children, being his heirs, the following described premises [being the premises hereinbefore described]. And we hereby covenant with the said William R. Harris and children, being his only heirs, and to their heirs that we hold said premises in fee simple; that we have good and lawful authority to sell and convey the same; that they are free and clear from all liens and incumbrances whatsoever, and we covenant to warrant and defend the said premises against the lawful claims of all persons whomsoever, and the said Mary Harris relinquishes her right of dower in and to the above described premises.

"Signed this 31st day of August, A. D. 1875."

Both the plaintiffs and the defendants claim under this deed.

Plaintiffs claim that William R. took only a life estate, measured by his own life, and that they, his children, took the remainder; that the life estate terminated on the death of William R., December 10, 1914; that these plaintiffs, therefore, are now entitled to the land described in the deed, and are entitled to have the title quieted in them.

The defendants claim that William R. took the fee estate, under the Rule in Shelley's Case; that, through mesne conveyances from William R., they hold the same title that the deed gave William R. It appears that, on the 25th day of December, 1875, William R. made a quitclaim deed to one Conner for the stated consideration of $516, and that this was duly recorded on April 8, 1876; that, on the 29th day of April, 1876, Conner made a quitclaim deed back to Reuben, the original grantor of William R., for the stated consideration of $533.76; that this was recorded, December 11, 1876; that, on September 29, 1884, Reuben and wife made a quitclaim deed of said premises to the defendant John A. Brown, for the stated consideration of $1,000; that this was recorded, December 11, 1893. Defendant Brown claims that he, through himself and tenants, took and has ever since held possession of the land.

On the 24th day of December, 1915, the plaintiffs brought this action to quiet their title against this claim on the part of the defendants.

The defendants set up two defenses:

(1) That, under the deed from Reuben Harris and wife to William R. Harris, William R. took a fee estate, under the rule in Shelley's Case; and hence, by these mesne conveyances, or quitclaims, they hold the fee title.

(2) That, if the deed from Reuben to William Harris did not convey to William a fee title, but only a life estate, yet the plaintiffs are barred from now claiming the land, for the reason that defendants have been in adverse possession of the same for more than ten years, and that the stat-

ute of limitations stands in the way of plaintiffs' claim.

Upon the issues thus tendered, the cause was tried to the court, Hon. C. W. Vermilion presiding. On the 19th day of August, 1916, a decree was entered in favor of the plaintiffs, and the title to the land quieted in them, against the claim of the defendants. From this decree, defendants appeal.

We will consider defendants' first contention: Did William R. Harris take a fee title, under the deed hereinbefore set out?

Reuben owned this land, and had the legal right to make such disposition of it as he saw fit. He undertook to do this by the instrument under consideration. If we look to the deed alone, we must say it was the evident purpose and intent of the grantor, Reuben, to convey to one William R. a life estate only. The express wording of the deed so indicates: to wit, "have given unto the said William R. Harris *during his lifetime,* and *at his decease* to his children, being his heirs." To hold that William R. took more than a life estate, and to hold that he took the fee, is to ignore the intent, as manifested in the deed. To so hold, we must be forced to it by the application of that old rule known as the Rule in Shelley's Case, now repealed, but then in force. But to so hold is to do violence to the rule itself, as construed in former holdings of this court. The conveyance is made to William R. and his children. The words "being his heirs" simply emphasize the specific class, and add to or take nothing from the class described, to whom it was intended the remainder should pass. Construing the words "being his heirs" as simply designating more particularly the specific class to whom it was intended the remainder should pass, we have the expressed intention that the remainder should pass to William's children. Under the Rule in Shelley's Case, this does not enlarge the life estate granted, to an estate in fee. It is evident that children

of the grantee of the life estate must be begotten at least
before the termination of the life estate. Where the con-
tinuance of the estate is dependent on the life of the gran-
tee, the takers of the remainder, therefore, are certain, or
capable of being made certain during the continuance of the
life tenancy. They form a specific class, possible of ascer-
tainment during the continuance of the life estate. The
Rule in Shelley's Case, invoked by the defendant, as applied
to the conditions here, simply is that, where a freehold for
life only is created by deed, and in the same instrument a
limitation on the freehold by way of remainder is made *to
his heirs,* the limitation to the heirs entitles the grantee to
the fee. As said in *Ault v. Hillyard,* 138 Iowa 239, 241:

"It is well settled that, where a conveyance is to one for
life, with the remainder over to the children of the life ten-
ant, the words of the grant are to be taken as words of pur-
chase, and the Rule in Shelley's Case has no application."

See, also, as bearing upon the question here under con-
sideration, *Doyle v. Andis,* 127 Iowa 36; *Harlan v. Man-
ington,* 152 Iowa 707, 715; *Westcott v. Meeker,* 144 Iowa
311, 323; *Westcott v. Binford,* 104 Iowa 645; *Roberson v.
Wampler,* 104 Va. 380 (51 S. E. 835, 1 L.R.A. [N. S.] 318,
with notes); *Seymour v. Bowles,* 172 Ill. 521 (50 N. E.
122).

The word "heirs" has a definite legal signification. It
is a technical word, and, when unexplained and uncon-
trolled by the context, is usually interpreted according to its
strict technical meaning; and if no other meaning can be
gathered from it than the technical meaning, after a consid-
eration of the whole intent and purpose of the grantor, as
expressed in the instrument, it will be given its technical
meaning. But if, from the language used in the instrument
and the circumstances attending its execution, it appears
that the maker used the word "heirs" to mean children, it
will be construed to mean children. The meaning will be

given to the word which the grantor intended it should have. Even where the grantor uses the word "heirs," if, by other words, it is made manifest that, in the use of the word "heirs," he intended his children, that intention will be made effectual by construing the instrument accordingly. *Hall v. Leonard,* 1 Pick. (Mass.) 27; *Hileman v. Bouslaugh,* 13 Pa. St. 344 (53 Am. Dec. 474, 478); *Seymour v. Bowles,* 172 Ill. 521 (50 N. E. 122).

Feeling, as we do, that it was the evident intent and purpose of the grantor, Reuben, to convey only a life estate to his son, William R., and the remainder over to William's children, we must find that defendant Brown, through his mesne conveyances, took only such interest as William R. took under his deed, and is limited to a life estate.

This brings us to a consideration of the defendants' second defense: Have they been in the open, adverse, notorious possession of this land for the statutory period, so that title, by reason of the adverse possession, has ripened in them, as against the claim of these plaintiffs?

He is presumed to have entered the land under his deed. He is presumed to have continued to claim the land under his deed. The deed limited him to a life estate in the property. He was entitled to possession, under his deed, during the life of William R. He was entitled to enjoy all the benefits of that possession during the existence of the life tenancy. The duty rests upon him, as life tenant, to pay the taxes. It is a familiar doctrine that, where one enters upon land, he is presumed, unless the contrary appears, to enter and hold possession under the title which the deed under which he enters, purports, upon its face, to convey. The possession taken, and his claim of right to possession is presumed to rest on and be found in the deed under which his right to enter and take and hold possession was first exercised. This entry did not, there-

2. ADVERSE POSSESSION: possession under quitclaim from life tenant.

fore, indicate a purpose to assert a claim to more than his deed gave him, or any claim hostile to the rights of these remaindermen. The possession, to be adverse, must not only be actual, continuous, visible, notorious, and distinct, but *hostile*, and under claim of right or color of title. The burden of showing adverse possession rests upon the person who asserts title upon that ground. The presumptions are all in favor of the holder of the legal title. In speaking of the claim of right which must exist before the possession can ripen into title, this court said, in *Grube v. Wells*, 34 Iowa 148:

"One may believe a proposition without making it known, or without possessing any knowledge upon the subject. It is, or may be, a passive condition of the mind, prompting in neither action nor declaration. The term 'claim' implies an active assertion of right—the demand for its recognition. This assertion and demand need not be made in words; the party may speak by his acts in their support, as by the payment of taxes, erection of improvements, etc. One may *believe* that he has a right to land, without asserting or demanding it. But it is said the right is asserted by the possession. This cannot be admitted; for the possession, to be supported by the law, must be under claim of right."

The deed gave defendants no color of title, beyond that which the deed itself upon its face suggested. It is true, one may have color of title though his deed be defective, or though the deed be void; yet the deed, to give color of title, must bear evidence of the passing of the title claimed. In this particular case, the tenant is in possession under an instrument conveying to him only a *life estate;* the duty to pay taxes rested upon him; and, therefore, the discharge of that duty gave no evidence of an intention to claim more than his deed conveyed. His deed threw upon him this obligation, and he discharged only the obligation of a life

tenant. Whatever the secret purpose of the defendant may have been, after he took possession, touching this land, there is nothing in the record to show that he gave any outward manifestation of that intention by word, act, or deed. He never did or said anything that came to the knowledge of these plaintiffs, to claim more than his deed gave him, or that called upon these plaintiffs, at any time prior to the death of their grantor, to make contest with him over any claim. His possession did not give them notice of any such claim as urged here, because, under his deed, he was entitled to possession as the owner of the life estate. There were no improvements placed upon the land, during the time of his occupancy, except such as were perfectly consistent with his claim to a life tenancy; simply such as enabled him better to use and enjoy the estate granted. It was his duty to make reasonable improvements, and to keep the place, as nearly as practicable, in the condition in which he received it, that it might pass to the remaindermen unimpaired; and such improvements are presumed to have been made for his own benefit. See *Booth v. Booth,* 114 Iowa 78.

We see nothing in this case supporting defendants' contention. The court was right, therefore, in sustaining the plaintiffs' contention by decree, and its action in so doing is —*Affirmed.*

PRESTON, C. J., WEAVER and STEVENS, JJ., concur.