HUBBELL v. BURNET, Commissioner of Internal Revenue (three cases). *

WACHTMEISTER v. SAME.

Nos. 8740–8743.

Circuit Court of Appeals, Eighth Circuit. Jan. 7, 1931.

SCOTT, District Judge, dissenting.

J. G. Gamble, of Des Moines, Iowa, for appellants.

G. A. Youngquist, Asst. Atty. Gen. (Sewall Key and John H. McEvers, Sp. Assts. to the Atty. Gen., and C. M. Charest, Gen.

*Certiorari denied 51 S. Ct. —, 75 L. Ed. —.

Counsel, Bureau of Internal Revenue, of Washington, D. C., on the brief), for appellee.

Before STONE and VAN VALKENBURGH, Circuit Judges, and SCOTT, District Judge.

VAN VALKENBURGH, Circuit Judge.

December 31, 1903, Frederick M. Hubbell and wife, of Des Moines, Iowa, by trust conveyance and convention conveyed to trustees therein named certain property in said instrument described, constituting the "Frederick M. Hubbell estate," reserving the net income of and from the trust property and estate to the settlor, Frederick M. Hubbell, and after his death to his wife, Frances E. Hubbell, should she survive him, the sum of $18,000 annually during her natural life. By supplemental agreement, dated January 2, 1919, the original trust conveyance and convention was modified, whereby the settlor released and relinquished all the net incomes from said trust estate during the remainder of his life, except the sum of $20,000 each year from and after January 1, 1919.

The original trust conveyance described the trust period created thus:

"It shall commence upon the execution of these presents, and shall continue and exist during the lives of the following named persons, who are each and all now living, viz., Frederick M. Hubbell and Frances E. Hubbell, his wife—hereinafter called 'trustors'—Frederick C. Hubbell, Beulah C. Wachtmeister and Grover C. Hubbell—children of the said Frederick H. Hubbell—and Frederick W. Hubbell and James W. Hubbell—sons of the said Frederick C. Hubbell—and during the life of the survivor of said persons, and for twenty-one (21) years thereafter."

In that same instrument the distribution of the net income and of the trust estate at the expiration of the trust period was thus provided:

"At and after the death of said Frederick M. Hubbell, the net income of and from the trust property and estate aforesaid, after the payment of the annuity, above raised and provided, to the said Frances E. Hubbell, shall, during the remainder of the trust period aforesaid, be paid by said trustees, either annually, semi-annually, quarterly or monthly, as to said trustees may seem best as follows: One-third (⅓) to the said Frederick C. Hubbell, and to the heirs of his body; one-third (⅓) to the said Beulah C. Wachtmeister, and to the heirs of her body, and one-third (⅓) to the said Grover C. Hubbell, and to the heirs of his body. And, should any of said children of the trustors, viz., Frederick C. Hubbell, Beulah C. Wachtmeister or Grover C. Hubbell, die without leaving heirs of the body, him or her surviving, the one-third (⅓) share payable to such child so dying without heirs of his or her body, shall thereafter be paid by said trustees to the surviving children or child of the trustors, and to the heirs of their respective bodies; the intention of this article being that said three children of the trustors and their lineal descendants, and no one else, shall, after the death of the said Frederick M. Hubbell, and subject to the provisions of Article VII hereof, (the provision for the wife of the settlor should she survive him), take, have and enjoy the net income of and from the trust property and estate aforesaid, and that such lineal descendants shall take per stirpes and not per capita. * * *

"At the expiration of the trust period hereby created, said trustees shall account for, pay over, distribute among and convey to the lineal descendants of the said Frederick C. Hubbell, Beulah C. Wachtmeister, and Grover C. Hubbell, then living, the trust property and estate then remaining in the hands and under the control of said trustees; said lineal descendants to take per stirpes and not per capita.

"If at any time after the death of the said Frederick M. Hubbell and Frances E. Hubbell, no lineal descendants of the trustor, Frederick M. Hubbell, should be in existence, capable of inheriting, the trust property and estate aforesaid shall go to and vest in the State of Iowa, to be used by it in the founding, erection and maintenance of a College of Learning in the City of Des Moines, Polk County, Iowa, and said trustees shall account for, pay over and convey to the said State of Iowa, for said purpose, the trust property and estate then remaining in their hands and under their control."

In the supplemental agreement the following modification was made as to the disposition of the net income:

"It is further agreed by and between the parties hereto that all of the net income from said trust estate in excess of said sum of Twenty Thousand Dollars ($20,000.00) and which, but for this instrument and the agreements herein contained, would, under the terms and provisions of said Trust Conveyance and Convention, be paid to the said Frederick M. Hubbell, shall hereafter, during the remainder of the period of the nat-

ural life of the said Frederick M. Hubbell, be paid to the children of the said Frederick M. Hubbell and Frances E. Hubbell, his wife, namely; Frederick C. Hubbell, Beulah C. Wachtmeister, and Grover C. Hubbell, share and share alike, or to their heirs, as provided in such Trust Conveyance and Convention with respect to income from said trust estate, to be paid to such persons."

During the calendar year 1922 the trustees, under their construction of their powers and duties conferred by the trust convention and agreement, set aside the sum of $34,978.-59 as a charge for depreciation upon depreciable property held by them, and, for the year 1923, the sum of $38,511.78 for the same purpose. The Commissioner of Internal Revenue increased the amounts distributable to the beneficiaries, for the years 1922 and 1923, by these sums, and determined a deficiency in tax accordingly. Upon appeal to, and redetermination by, the Board of Tax Appeals, the ruling of the Commissioner was upheld, and it was ordered and decided "that there are deficiencies in tax for the years 1922 and 1923 in the respective amounts of $3,944.29 and $2,760.62." To review this order and decision, these appeals are taken. Stipulations are on file waiving the printing of record in causes numbered 8740, 8741, and 8742, and providing that each of such appeals should abide by the decision of this court in the appeal of F. C. Hubbell, No. 8743. That particular section of the statute under which the Commissioner has acted is section 219(d) of the Revenue Act of 1921 (42 Stat. 227, 246), which provides:

"In cases under paragraph (4) of subdivision (a) * * * the tax shall not be paid by the fiduciary, but there shall be included in computing the net income of each beneficiary that part of the income of the estate or trust for its taxable year which, pursuant to the instrument or order governing the distribution, is distributable to such beneficiary, whether distributed or not."

The only question presented is whether the amounts set aside for depreciation by the trustees were distributable to the beneficiaries. If they were, then they were taxable, and, as they were not returned for taxation, the deficiency exists as determined by the Commissioner and decided by the Board of Tax Appeals.

■ In this connection the meaning of the term "net income," as used in the trust instrument, becomes important. It is conceded that in some situations, for example, in the case of a mining, mercantile, or manufactur-

ing business, in arriving at the profit realized from sale, the depreciation charges permitted as a deduction from the gross income for any year represents the reduction during the year of the capital assets through wear and tear of the plant used. United States v. Ludey, 274 U. S. 295, 47 S. Ct. 608, 71 L. Ed. 1054. So, also, in rate making for public utilities, depreciation is allowed and deducted in determining the net return. City of Knoxville v. Knoxville Water Co., 212 U. S. 1, 29 S. Ct. 148, 53 L. Ed. 371. However, this trust convention, in the nature of a testamentary disposition of property, as in the case of wills, must be construed in accordance with the intent of the settlor, which is to be gathered from the four corners of the document. In re Sherman Trust, 190 Iowa, 1385, 179 N. W. 109.

The property conveyed in trust was divided into three classes, designated as follows:

"Schedule A. Real Property; not to be sold;

"Schedule B. Real Property, which may be sold;

"Schedule C. Personal Property."

The trust instrument is very carefully drawn, and deals explicitly and in detail with the powers and duties of the trustees respecting each of these schedules. Concerning Schedule A, that document provides:

"They shall have power to contract debts on the faith and credit of said property and to secure said debts by mortgage, bond, or otherwise, for the purpose of improving said property, to the amount of One Hundred Thousand (100,000) Dollars; but they shall have no power to contract debts on the faith and credit of said property, or to secure the same, except for the purpose of improving said property, and the sum total of such indebtedness shall never, at any time, exceed said sum of One Hundred Thousand (100,-000) Dollars, exclusive of interest.

"They shall have no power to sell or dispose of said property, or any part of it, except for party walls, streets, alleys, public places, rights-of-way, depot grounds, or other railroad purposes, until the expiration of said trust period."

With respect to Schedules B and C the powers conferred are much broader. These are described in the following paragraphs of the trust instrument:

"During the whole of the trust period aforesaid, said trustees shall have full power and authority to demand, collect, sue and re-

ceipt for, take and enter into possession of and hold the property listed and described in the schedules hereto attached, under the headings 'Schedule B. Real Property, which may be sold,' and 'Schedule C. Personal Property,' and each and every lot, part and parcel thereof.

"They shall have power to lease said property, and to demand, collect, sue and receipt for the rents, issues and profits arising and which may be had therefrom; to bring, maintain and defend actions, both at law and in equity, involving, growing out of, or in any wise affecting said property; to maintain, improve and insure, and to plat and subdivide the same, and to vacate the plats and subdivisions thereof, as to them may seem to the best advantage of the trust estate.

"They shall have power to pay all liens, encumbrances, and claims upon and against said property, whether now existing or hereafter created.

"Further, said trustees shall have full power and authority to sell, assign, transfer, convey and deliver possession of said property listed and described in said schedules, under the headings, 'Schedule B. Real Property, which may be sold,' and 'Schedule C. Personal property,' or any lot, part or parcel of it, at such prices and upon such terms as to them may seem best, and they shall have power to invest and re-invest the rents, issues, profits and proceeds of sale thereof, in real estate situated in Polk County, Iowa, and in the improvement of said property, and in the improvement of the property listed and described in said schedules, under the heading, 'Schedule A. Real Property; not to be sold.'

"Further, said trustees shall have power to contract debts on the faith and credit of said property listed and described in said schedules 'B' and 'C'; to mortgage, bond, or otherwise encumber the same, or any part thereof, should the exigencies of the trust so require, and to charge said property with all necessary, proper and reasonable expenses of maintenance, and of administration of the trust hereby created, including reasonable compensation to the trustees while actively engaged in attending to the business and management of the trust.

"In short, during the whole of the trust period aforesaid, said trustees shall have full power and authority to manage and control said property in such manner as to them may seem advisable, and shall have, enjoy and exercise all powers and rights over and con-cerning said property, and the proceeds thereof, as fully and amply as though they were the absolute and unqualified owners of it, excepting only that the net rents, issues, profits and proceeds of sales thereof shall be invested by them only in such real estate and in such manner as is above set forth."

Special provision is made for the preservation of "Terrace Hill," the seat of the settlors, as a family homestead, "the intention of the trustors being that said 'Terrace Hill' shall be maintained by said trustees with and from the general revenues of the trust, and shall be and remain the homestead of the Hubbell family, and in the possession of the eldest male lineal descendant of the trustors, so long as any such descendant exists, during the whole of the trust period aforesaid." The property known as "Terrace Hill" is referred to as "described again in said Schedule A," and it is significant, as bearing upon the question now under consideration, that it is directed to be treated in a manner entirely different from the treatment permitted with respect to all the other property described in that schedule. It is quite evident that that special tract was to be preserved, practically intact, as a family homestead during the life of the trust. To this end use of the general revenues is permitted. Not so as to the remaining property in Schedule A. That remainder cannot be sold nor can its credit be pledged for improvement in excess of $100,-000. However, property in Schedules B and C may be sold and disposed of upon such terms as to the trustees may seem best, and the proceeds therefrom may be used "in the improvement of said property and in the improvement of the property listed and described in said schedules under the heading, 'Schedule A. Real Property; not to be sold.'" The trust instrument contains in itself a complete code of rules concerning what may be done for the maintenance and improvement of the property intended during the trust period. By implication it negatives any idea of the creation of a sinking fund for replacements, and that is what the setting aside of these sums as a charge for depreciation amounts to. Undoubtedly the settlors might have provided for such a deduction from the net income accruing to the beneficiaries, if such was their desire. It is equally beyond doubt that no such provision was made. It would follow, therefore, that the sums set aside for depreciation were distributable to the beneficiaries in the trust convention, and, as such, were subject to tax, as found. This result accords with the great weight of authority applicable to the situa-

tion presented. It is conceded in argument that the beneficiaries named, appellants herein, occupy the position of life tenants, and that their interests and obligations are to be determined substantially in accordance with the rules applicable to such. Reliance is placed upon the language of the court in Harris v. Brown, 184 Iowa, 1288, 1295, 169 N. W. 664, 667, wherein it is said, speaking of a life tenant:

"It was his duty to make reasonable improvements and to keep the place, as nearly as practical, in the condition in which he received it, that it might pass to the remaindermen unimpaired, and such improvements are presumed to have been made for his own benefit"—citing Booth v. Booth, 114 Iowa, 78, 86 N. W. 51.

If this language is to be accorded the meaning for which appellant contends, that is to say, that it is the duty of the life tenant to make permanent improvements amounting to replacements, it finds small support in the cited case. In Booth v. Booth it was held that the life tenant could not be allowed for taxes paid, because it was his duty to pay them. His claim for improvements made was disallowed because he failed to show "the permanent value of the improvements as distinct from the cost of ordinary repairs." In our judgment, Harris v. Brown goes no further than to recognize the duty of a life tenant to maintain the property in such good condition as results from the making of ordinary repair. This is indicated by previous decisions of the same court. In Milner v. Brokhausen, 153 Iowa, 560, 133 N. W. 1068, it is held that, in the absence of limitation or restriction, the income of property in which a life estate is granted is the property of the life tenant and not of the remaindermen. And in Shelangowski v. Schrack, 162 Iowa, 176, loc. cit. 181, 143 N. W. 1081, 1083, it is said:

"It is the general rule that a life tenant must, at his own expense, make such repairs as are necessary to preserve the improvements and to prevent waste due to their getting into a state of dilapidation. Tiffany on Real Property, §§ 32–254. Of course, he is not bound to make extraordinary repairs, which involve the substitution of new structures for old, or parts thereof for old. Suydam v. Jackson, 54 N. Y. 450. But, if he does so, he would not be allowed direct reimbursement therefor from the reversioners."

In this language Judge Gaynor, the writer of the opinion in Harris v. Brown, supra, concurred. Neither Milner v. Brokhausen, nor Shelangowski v. Schrack, is referred to in Harris v. Brown, and it is clear that, in the latter case, there was no intention to depart from the rule announced in those decisions, which is in harmony with that prevailing generally in federal and state jurisdiction.

In re Chapman, 32 Misc. Rep. 187, 66 N. Y. S. 235, holds that an executor may not properly withhold from a widow a portion of income earned as a sinking fund to provide against depreciation and for the benefit of the remaindermen. This is in harmony with the rule announced by the New York Court of Appeals in Stevens v. Melcher, 152 N. Y. 551, 565, 46 N. E. 965.

The Circuit Court of Appeals for the First Circuit, in Baltzell v. Mitchell, 3 F. (2d) 428, 430, holds that resort must be had to the terms of the trust to ascertain the proportion of income or distributive share of a beneficiary, and says:

"The beneficiary is not interested in the capital of the trust, but only in the income. If there are accretions to the capital, these are not distributable as income, so that the beneficiary may receive any part of them; and if there are capital losses they cannot be made good out of the income."

The Circuit Court of Appeals for the District of Columbia in Whitcomb v. Blair, 58 App. D. C. 104, 25 F.(2d) 528, 529, states the proposition thus:

"The appellant as life tenant in the trust estate was entitled to receive the full one-ninth of the income therefrom, without regard to exhaustion or wear and tear of the corpus of the estate, and that is what appellant actually received from the trustee as her distributive share of the income. The trustee was not entitled to withhold any part of her share of the income of the trust estate in order to make good the exhaustion or wear and tear of the capital assets of the estate; nor did the trustee in fact do so. Capital losses in such cases fall upon the reversioners or remaindermen, and not upon the life tenant."

Baltzell v. Mitchell, supra, and other cases, state and federal, are cited in support of this conclusion.

It conclusively appears, therefore, that these amounts, reserved by the trustees as a charge for depreciation, are distributable to the beneficiaries, and are taxable as such, whether actually distributed or not, in accordance with the provisions of the statute. There is in the trust instrument no authority for the creation of a sinking fund to meet depreciation of the corpus. As has been

said, that instrument was prepared with great care and attention to details. If the trustors had had in mind a proceeding of this nature, vitally affecting the income of the beneficiaries, unquestionably they would have covered it by explicit statement. The mere fact that, in contemplation of all the parties, the remaindermen may be lineal descendants of the present beneficiaries, and that the latter have consented to these deductions from their income, cannot change the application of the law, nor relieve from the taxation therein provided. The order of the Board of Tax Appeals must be affirmed, and the petition to review dismissed. It is so ordered.

SCOTT, District Judge (dissenting).

I regret that I am unable to concur with the majority decision in this case. The power and duty imposed upon the trustees to maintain the real property described in Schedules A and B, considering the very large number of items of real property, their varied characters, and the long period of the trust, I think necessarily implies the discretion to maintain a reasonable fund for the maintenance of the property. I think "maintenance" as used in the trust instrument means making good the depreciation of the property. I think the expression in article VI, "the net income of and from the trust property and estate," means only the residue after all disbursements and reservations within the discretion of the trustees have been accounted for. I would reverse the decision of the United States Board of Tax Appeals.