DOUGLAS W. ROBERT ET AL. v. MERCANTILE TRUST COMPANY, Trustee under Will of EDWARD S. ROBERT, ET AL., Appellants.—23 S. W. (2d) 32.

Division One, December 30, 1929.

*Paul Bakewell, Jr.,* for appellants.

*Douglas W. Robert* for respondents.

320

SEDDON, C.—This is an action in equity, wherein plaintiffs (respondents here), as life beneficiaries of a trust estate created by the last will and testament of Edward S. Robert, deceased, seek to compel the Mercantile Trust Company of St. Louis, Missouri, as the testamentary trustee of said trust estate under said will, to distribute and deliver to the life beneficiaries of said trust estate 532 shares of the no-par-value common stock of the Scullin Steel Company, a Missouri corporation, which 532 shares of common stock, together with 133 shares of seven-per-cent cumulative preferred stock (par value $100 per share) of the said Scullin Steel Company, were delivered to said trustee in lieu of 532 shares of par-value ($25 per share) common stock of said corporation which were administered and held by said trustee as part of the corpus of the trust estate created by said will of Edward S. Robert. The plaintiffs claim that said 532 shares of no-par-value common stock of the Scullin Steel Company constitute and represent a stock dividend of said Missouri corporation, and are immediately distributable by the trustee of said trust estate, as income of the trust estate, to the life beneficiaries of said trust estate.

The parties plaintiff are Douglas W. Robert and Lee E. Robert, surviving brothers of the testator and creator of the trust estate, Edward S. Robert; their respective wives and children; and Elizabeth Woodson Robert, widow of Dent H. Robert, a deceased brother of the testator. The parties defendant are the Mercantile Trust Company of St. Louis, trustee under the will of the testator; John G. Robert, a surviving brother of the testator; Minnie Robert and Edwa Moser, wife and daughter, respectively, of said John G. Robert; and Leo Moser III and John Robert Moser, grandchildren of said John G. Robert.

A trial and submission of the equitable action to the chancellor below resulted in the entry of a decree in favor of the several life beneficiaries (plaintiffs), wherein the Mercantile Trust Company, as trustee of the trust estate created by the will of Edward S. Robert, deceased, was ordered to pay over and deliver to the respective life beneficiaries, in the proportions in which they respectively are entitled to receive the income of the trust estate under the will of

testator, all of said 532 shares of no-par-value common stock of said Scullin Steel Company; or, if said shares of stock have been sold by said trustee, then, in lieu of said stock, the trustee shall pay to the respective life beneficiaries, in the same proportions, the cash proceeds received by the trustee from the sale of said stock. After an unsuccessful motion for a new trial, the defendants (except the Mercantile Trust Company) were allowed an appeal to this court. This court retains jurisdiction of the appeal because the value of said shares of stock, as disclosed by the record herein, exceeds the sum of $7,500.

The pleadings of the several parties appropriately raise and join the single issue submitted to, and determined by, the chancellor below. Hence, it is unnecessary to state herein the substance of the pleadings of the respective parties.

The evidence discloses that Edward S. Robert died testate on December 12, 1911, and was survived by his wife, but left no descendants, and left no heirs other than those mentioned in his will. The testator, at the time of his death, owned and held 133 shares of common stock (par value, $100 per share) of the Scullin Steel Company, which stock was part of testator's estate, and was delivered to, and held by, the Mercantile Trust Company, as the trustee of the trust estate created by testator's will.

The will of Edward S. Robert contains the following trust provisions:

"Second. All the rest and residue of my property, real, personal and mixed, I give, devise and bequeath unto Charles A. Madill and Douglas W. Robert, in trust, with the fullest powers to sell, lease, convey, mortgage, encumber, pledge, trade, exchange or dispose of any or all of said property, and any property in which at any time the proceeds of any of said property shall be vested, with the same freedom that they would have the right if it were absolutely their own, provided, however, they first obtain the consent of my wife in writing.

"(a) Said Trustees shall pay out of the income of said property the necessary expenses for executing this trust and thereafter shall pay over in monthly installments the entire income to my wife, out of which said income I request my wife to pay to my brother, John G. Robert, and to his wife if she survives him, two hundred dollars ($200) per month, less whatever sum shall be paid him monthly by my brother, Dent H. Robert, and also to pay out of said income the sum of Seventy-five Dollars ($75) per month to my brother, Lee. The rest of said income shall belong to my wife absolutely during her life. While I have indicated what I wish her to give to my brothers, John and Lee, these payments shall in nowise be charges on my real estate, and if the same is sold, it shall pass free of all charges.

"(b)    On the death of my said wife, said Charles A. Madill and Douglas W. Robert, Trustees, shall sell my real estate and pay over and deliver to the Mercantile Trust Company of St. Louis, in trust, the corpus of said fund.

"(c)    Said Mercantile Trust Company of St. Louis, as Trustee, shall pay over to my brother, John, so long as he lives, out of the income of said property, in monthly installments, the sum of Five Thousand Dollars ($5000) per annum, provided, however, that said sum shall not exceed one-half of the net income from said property, and if it does exceed one-half of the net income, then it shall pay over to him but one-half of the net income, so long as he lives, my intention being that my brother, John, shall receive $5,000 per year if one-half of the income amounts to that, and if one-half of said income exceeds said $5,000, then all over that sum shall be distributed among the other beneficiaries of this trust in the proportions mentioned in the respective paragraphs.    After the death of my brother, John, said Trust Company shall pay over his share of said net income to his wife, Minnie, so long as she lives, and after her death to her daughter, Edwa, so long as she lives, as a separate estate, free from all control, use or interference of any husband. Said Edwa shall have no power to charge said property with any debt, now or hereafter incurred, or to assign, anticipate or forestall any income in any way whatsoever, nor shall the same be liable for any of her debts, and if the said trustee sees fit, it may use the income to pay her living expenses, without giving it directly to her. If the said Edwa dies, leaving a child or children, one-half of the corpus of said estate shall be delivered to such child or children, but if she leaves none, then to my right heirs. If the said Edwa shall die before the said Minnie, leaving no child or children, then on the death of the said Minnie said one-half of the corpus shall go to my right heirs.

"(d)    Said Mercantile Trust Company of St. Louis shall pay over in monthly installments, one-fourth of said income to my brother, Douglas, during his life, and after his death, to his wife, Eliza, during her life, and after the death of both, then to their two children during their life, or to the survivor of them, if one die without children, as a separate estate, free from all control, use or interference of any husband; and upon their death, one-fourth of the corpus of said estate shall be delivered to their descendants *per stirpes* and not *per capita*.    If the said children of my brother, Douglas, die leaving no child or children, then said one-fourth of the corpus shall go to my right heirs.

"Said children of my brother, Douglas, shall have no power to charge said property with any debt now or hereafter incurred, or to assign, anticipate or forestall any income in any way whatsoever,

nor shall the same be liable for any of their debts, and if the said Trustee sees fit it may use the income to pay their living expenses, without giving it directly to them.

"(e) Said Mercantile Trust Company of St. Louis shall pay over one-eighth of the net income of said estate in monthly installments to my brother, Dent, during his natural life, and after his death, to his wife, Elizabeth, until she remarries, and upon the death of both my brother, Dent, and his wife, Elizabeth, or upon his death and her remarriage, then said one-eighth of said net income shall be paid over to my brother, Douglas, his wife and children, and said one-eighth of said corpus shall be held and paid over under the same terms and conditions as provided in Section (d) of this paragraph.

"(f) The remaining one-eighth of said net income shall be paid over by said Mercantile Trust Company of St. Louis to my brother, Lee, in monthly installments, for and during his natural life, and he shall have no power to charge said property with any debt, now or hereafter incurred, or to assign, anticipate or forestall any income in any way whatsoever, nor shall the same be liable for any of his debts, and if the said Trustee sees fit it may use the income to pay his living expenses, without giving it directly to him. If my brother Lee dies without having married, then his said one-eighth of said net income shall be paid over to my brother, Douglas, and his wife and children, and said one-eighth of said corpus shall be held and paid over under the same terms and conditions as provided for in Section (d) of this paragraph. If my brother, Lee, should marry and have children, or leave a wife after his death, then said one-eighth of said net income shall be paid over to his said wife for and during her natural life, or until she remarries, and if she leave children by my brother, Lee, then one-eighth of the corpus of said estate shall be paid over and delivered to said children, but if he dies, leaving a wife and no children, after her death or remarriage said one-eighth of said net income shall be paid over to my brother, Douglas, his wife and children, and said one-eighth of said corpus shall be held and paid over under the same terms and conditions as provided in Section (d) of this paragraph.

"(g) The Mercantile Trust Company of St. Louis shall have the same power to sell, lease, convey, mortgage, encumber, pledge, trade, exchange or otherwise dispose of said trust property or any of it as if it were the sole owner, but shall not at any time invest any of the proceeds in any speculative stocks, bonds or securities, but shall not be limited in investments to those required of trustees by law.

"Third. If my wife decides to take one-half of my property absolutely, then the other one-half shall be turned over to the Mercantile Trust Company of St. Louis, by my said Trustees, and the

income distributed in the same proportion and to the same persons as hereinbefore provided for in the event of the death of my wife. If the said Trust Company thinks best, it may own the real property as tenant in common with my wife. It is not my wish that any of my property be sold, unless the trustees or the Mercantile Trust Company think it is of too speculative a character.''

The widow of testator elected to take one-half of testator's estate absolutely, and the remaining one-half of testator's estate was turned over to the Mercantile Trust Company of St. Louis, as provided in the ''third'' clause or paragragh of said will, which trustee has administered the trust estate since early in the year 1912. The Mercantile Trust Company, as such trustee, received in 1912, under the terms of said will, the 133 shares of common stock of the Scullin Steel Company of the par value of $100 per share, which were owned and held by the testator at his death.

In February, 1924, by corporate action of the Scullin Steel Company, the par value of the common stock of the Steel Company was reduced from $100 to $25 per share, and the Mercantile Trust Company, as trustee, received 532 shares of common stock of the Scullin Steel Company, of the par value of $25 each, in exchange for said original 133 shares of common stock. At all said times, the capital stock of the Scullin Steel Company was $1,500,000, and there was but one class, or kind, of corporate stock—common.

On January 26, 1925, the stockholders of the Scullin Steel Company, by appropriate corporate proceedings had at a meeting of the stockholders duly called, adopted a resolution to amend the articles of association of said corporation by changing and increasing the then authorized capitalization of the corporation, which consisted of 60,000 shares of common stock with a par value of $25 each, or a total par value of $1,500,000, to 30,000 shares of seven-per-cent-cumulative preferred stock of the par value of $100 each, or a total par value of $3,000,000, and 100,000 shares of common stock without nominal or par value. Of the foregoing amount of authorized new stock, 15,000 shares of preferred stock, having a par value of $1,500,000, and 60,000 shares of common stock without nominal or par value, were authorized and ordered to ''be issued pro rata in exchange for the present outstanding stock; that is to say, one share of new preferred, and four shares of new no-par-value common, in exchange for each four shares of present par-value common now outstanding, thus leaving $1,500,000 preferred, and 40,000 shares common without nominal or par value, authorized but not issued, except as may be hereafter authorized by the Board of Directors, the 60,000 shares, par value $25 each, now outstanding to be canceled and not thereafter authorized.''

The resolution of the stockholders of the Scullin Steel Company provided that the holders of preferred stock shall be entitled to receive cumulative dividends at the rate of seven per cent per share per annum, and no more, as and when declared by the board of directors of said corporation, payable quarterly on January 1, April 1, July 1 and October 1, in each year, before any dividends shall be declared, set apart, or paid on the common stock of the corporation; and no dividends shall be declared or paid upon the common stock of the corporation in any year, except after providing for the annual purchase or redemption of at least two per cent (of the par value) of the preferred stock, or which will reduce the net tangible assets of the corporation below an amount equal to twice the par value of the outstanding preferred stock of the corporation, or which will reduce the net current assets of the corporation to below fifty per cent of the total amount of the preferred stock outstanding. The preferred stock shall be redeemable on any quarterly dividend paying date, or as an entirety at any time, at $110 per share, plus accrued and unpaid dividends thereon. In the event of liquidation or involuntary dissolution of the corporation, the holders of preferred stock shall be entitled to receive $100 per share, and in the event of voluntary dissolution shall be entitled to receive $110 per share, plus accrued and unpaid dividends thereon. The outstanding preferred stock is to be amortized and redeemed at the rate of at least two per cent of the par value thereof annually. Exclusive voting power is vested in the holders of the common stock of the corporation (except in the event of certain defaults in payment of dividends on the preferred stock, or defaults in the annual amortization or retirement of the preferred stock), and no holder of preferred stock is to be entitled to subscribe for, or receive, any further issue, of stock, preferred or common.

The stockholders' resolution further provides: ''So much of the increase in capital as is to be presently issued to present stockholders in exchange for the present outstanding stock of the Company shall be issued full-paid and non-assessable through the transfer of the excess from surplus to capital account; $1,500,000 has heretofore been duly paid in and credited to capital account, which credit shall stand as full payment for the $1,500,000 par value of preferred stock now to be issued, and the sum of $60,000 (being at the rate of $1.00 per share) shall be transferred from surplus to capital account as full payment for the 60,000 shares of common stock without nominal or par value so to be presently issued, so that all of the shares, preferred and common, to be presently issued shall be full-paid and non-assessable, and all surplus of the Company remaining on hand, after deducting the amount to be transferred to capital account as aforesaid, shall remain as surplus of the Company

after such recapitalization. . . . The terms upon which the new shares shall be issued in place of the outstanding shares of stock are as above stated, viz.: One share of new preferred stock, par value $100, and four shares of new common stock without nominal or par value, in exchange for each four shares of present stock (par value $25 each) now outstanding.''

After the exchange of stock, the corporate statement of the Scullin Steel Company shows the financial structure and status of the corporation to be, as follows:

| | |
|---|---:|
| Total Assets | $9,240,386.92 |
| Total Liabilities (including Reserves) | 3,378,886.96 |
| Capital | 1,560,000.00 |
| Surplus | 4,301,499.96 |

The evidence further shows that, on December 31, 1911, the surplus of the Steel Company was $127,869.72, and the book value of the then (common) stock of the corporation was $108.52 per share. On January 25, 1925, the book value of the then stock (common, par value $25 per share) of the corporation was $97.75 per share, or the equivalent of $391 per share computed on a par value of $100 per share. On January 27, 1925 (following the corporate action of the stockholders of the Steel Company had and done on January 26, 1925), the book value of the new preferred stock of the corporation was $100 per share, and the book value of the new no-par-value common stock of the corporation was $72.75 per share. The difference between $4,361,499.96 (the surplus of the corporation at the time of the action of the stockholders authorizing the exchange of stock) and $127,869.72 (the surplus of the corporation at the time the trustee took possession of the original 133 shares of common stock of the corporation), or $4,233,630.24, was created out of the earnings of the Steel Company between December 31, 1911, and December 31, 1924.

No dividends were declared or paid by the company in the years 1911, 1912, 1913 and 1919. Dividends were declared and paid by the Steel Company during other years, as follows: 1914, five per cent; 1915, five per cent; 1916, ten per cent; 1917, fifty per cent; 1918, thirty-five per cent; 1920, 1921, 1922, and 1923, ten per cent each year; 1924, twenty per cent; 1925 (nine months), preferred stock, 5¼ per cent; common stock, $5 per share. All of said dividends paid upon the shares of stock of the Steel Company held by the Mercantile Trust Company, as trustee under the will of Edward S. Robert, were received by the said trustee, and distributed as income of the trust estate.

Following the corporate action of the stockholders of the Scullin Steel Company had on January 26, 1925, the Mercantile Trust Company of St. Louis, as trustee of the trust estate created by the will

of Edward S. Robert, on or about May 15, 1925, surrendered to the Scullin Steel Company the 532 shares of common stock (par value $25 each) of said corporation, and received from said Steel Company, in lieu of the surrendered shares of stock, 133 shares of the new seven-per-cent cumulative preferred stock ·of the corporation (par value $100 each), and 532 shares of the new no-par-value common stock of the corporation, all of which shares of stock, preferred and common, the Mercantile Trust Company now holds as trustee of the trust estate created by the will of Edward S. Robert, claiming that all of said shares of stock are part of the corpus, or principal, of said trust estate.

It is agreed, by and between the respective parties to the present action, that the Mercantile Trust Company, as trustee of the trust estate, has been, and now is, paying to the respective life beneficiaries under the will of Edward S. Robert the income from the trust estate (including the income from the 532 shares of no-par-value common stock of the Scullin Steel Company), in the respective proportions provided for in said will of Edward S. Robert, but that the Mercantile Trust Company has refused, and still refuses, to distribute and deliver to said life beneficiaries the 532 shares of no-par-value common stock of the Scullin Steel Company.

It is the contention of plaintiffs (respondents), on the one hand, that the 532 shares of no-par-value common stock of the Scullin Steel Company, which were delivered to the Mercantile Trust Company, as trustee of the trust estate created by the will of Edward S. Robert, on May 15, 1925, are, in fact, a stock dividend, and represent a distribution of the surplus earnings of the Scullin Steel Company since the death of the testator, and that said shares of stock constitute income of the trust estate, and should pass to the life beneficiaries of said trust estate at once.

It is the contention of defendants (appellants), on the other hand, that such shares of stock are not, in fact, a stock dividend, or distribution of the surplus earnings of the Scullin Steel Company, but merely represent a reorganization or rearrangement of the capital structure of the Steel Company, and that such shares of stock were received by the Mercantile Trust Company, as trustee under the will of Edward S. Robert, in consideration of an exchange of other and retired stock of the Steel Company; that the 532 shares of no-par-value common stock of the Steel Company represent merely the increment, or increase in the value of, the original and retired stock of the Steel Company which was received and administered by the trustee, and that, as such, the 532 shares of new no-par-value common stock constitute a part of the corpus, or principal, of the trust estate, which is ultimately distributable to the remaindermen, and not to the life beneficiaries, of the trust estate created by the will

of Edward S. Robert; and that, even though said 532 shares of no-par-value common stock of the Scullin Steel Company be deemed to represent a stock dividend of the Steel Company (as contended by respondents), nevertheless, such shares of stock constitute a part of the corpus, or principal, of the trust estate, and do not properly constitute income of the trust estate which is distributable to the life beneficiaries under the will of Edward S. Robert.

I. The appellants (defendants) insist that the 532 shares of new no-par-value common stock of the Scullin Steel Company were neither issued by the Steel Company, nor received by the Mercantile Trust Company, trustee of the trust estate created by the will of Edward S. Robert, as a stock dividend, or as a distribution of the surplus earnings of the Steel Company, and do not constitute or represent a stock dividend, in fact or in legal effect; but that the 532 shares of no-par-value common stock of the Steel Company were acquired and received by the Mercantile Trust Company, as trustee of the trust estate, in pursuance of a contract of exchange, whereby the trustee surrendered and exchanged 532 shares of the retired and canceled common stock of the Steel Company for an equivalent value of new stock, preferred and common, of the Steel Company.

When the Mercantile Trust Company, as trustee, took charge, early in the year 1912, of the trust estate created by the will of Edward S. Robert, it received, as part of the corpus or capital of the trust estate, 133 shares of the then outstanding common stock (par value, $100 per share) of the Scullin Steel Company. On December 31, 1911, the surplus earnings of the Steel Company amounted to $127,869.72, and the book value of its then outstanding common stock was $108.52 per share, so that the original 133 shares of common stock of the Steel Company which came into the possession of the Mercantile Trust Company, as trustee of the trust estate, had a book value, on December 31, 1911, of $14,433.16. However, there was no market for the stock at that time, and consequently there was no established market value of the stock; but it is conceded by the parties hereto that the original 133 shares of common stock of the Scullin Steel Company were then worth their par value, or $13,300. At that time, the total paid-in capital stock of the Steel Company amounted to $1,500,000, represented by 15,000 shares of common stock of the corporation, having a par value of $100 per share. In February, 1924, the Steel Company, by appropriate corporate action, reduced the par value of its then outstanding stock (all common) from $100 to $25 per share, and issued 60,000 shares of common stock (par value, $25 per share) in exchange for the then outstanding 15,000 shares of common stock (par value, $100 per

share) to be surrendered by the stockholders of the Steel Company. The Mercantile Trust Company, as trustee of the trust estate, surrendered to the Steel Company the original 133 shares of common stock of the Steel Company, which it had received in 1912 as a part of the corpus of the trust estate, and received in exchange therefor 532 shares of common stock (par value, $25 per share) of the Steel Company. These 532 shares of the common stock of the Steel Company were administered by the Mercantile Trust Company, as trustee of the trust estate, until May 15, 1925, and a cash dividend of twenty per cent on the par value of said stock, declared and paid by the Steel Company in 1924, was received by the trustee and was distributed as income on said 532 shares of common stock of the Steel Company among the respective life beneficiaries of the trust estate, pursuant to the will of Edward S. Robert. No claim was made at that time, or now, by any of the life beneficiaries that said 532 shares of the common stock (par value, $25 per share) of the Steel Company, or any part thereof, constituted a stock dividend, or a distribution of the surplus earnings, of the Steel Company, or that said 532 shares of stock represented any other than a mere change in form and number of the original 133 shares of common stock (par value, $100 per share) of the Steel Company, acquired by the Mercantile Trust Company in 1912 as part of the corpus or capital of the trust estate created by the will of Edward S. Robert. On January 25, 1925, the surplus earnings of the Steel Company amounted to $4,361,499.96, and the book value of its then outstanding stock (all common; par value, $25 per share) was $97.75 per share, so that the book value of the 532 shares of common stock then held and administered by the Mercantile Trust Company, as part of the corpus or capital of the trust estate, amounted to $52,003. On the next day, January 26, 1925, the stockholders of the Scullin Steel Company, by resolution adopted at a duly called meeting of the stockholders, amended the articles of association of the corporation by changing and increasing the then authorized capitalization of the Steel Company, which consisted of 60,000 shares of common stock with a par value of $25 per share, or a total par value of $1,500,000, to 30,000 shares of seven-per-cent cumulative preferred stock of the par value of $100 per share, and 100,000 shares of common stock without nominal or par value. Of the total authorized amount of new stock, however, only 15,000 shares of preferred stock, having a par value of $1,500,000, and 60,000 shares of no-par-value common stock, were ordered to be presently issued, the remaining authorized stock, preferred and common, to be unissued, except as thereafter authorized by the board of directors of the Steel Company. By the terms of the stockholders' resolution, the 60,000 shares of then outstanding common stock (par value, $25 per share) of the corporation

were to be canceled, and the new stock of the corporation, preferred and common, was to be issued "in place of the outstanding shares of stock" upon the basis of "one share of new preferred stock, par value $100, and four shares of new common stock without nominal or par value, *in exchange* for four shares of present stock (par value, $25 each) now outstanding." In order that the new stock, preferred and common, should be fully paid and non-assessable, the resolution of the stockholders of the Steel Company authorized and ordered that the 15,000 shares of new preferred stock (par value, $100 per share) to be presently issued should be paid for by the then capital account of the corporation, amounting to $1,500,000, and that the 60,000 shares of no-par-value common stock to be presently issued should be paid for by transferring $60,000 (being at the rate of $1.00 per share) from the surplus account to the capital account of the corporation, and that *"all surplus of the Company remaining on hand,* after deducting the amount to be transferred to capital account as aforesaid, *shall remain as surplus of the Company after such recapitalization."* Immediately after the stockholders' action of January 26, 1925, the capital account of the Steel Company aggregated $1,560,000, and the surplus account aggregated $4,301,499.96. On January 27, 1925 (the day next after the corporate action of the stockholders authorizing the exchange of stock), the book value of the new preferred stock of the Steel Company was $100 per share, and the book value of the new no-par-value common stock of the corporation was $72.75 per share. Pursuant to the terms of the resolution of the stockholders of the Steel Company adopted on January 26, 1925, the Mercantile Trust Company, as trustee of the trust estate created by the will of Edward S. Robert, on or about May 15, 1925, surrendered and delivered to the Steel Company, for cancellation, the 532 shares of old common stock (par value, $25 per share) of the corporation, having a book value of $52,003, and received in exchange therefor 133 shares of new preferred stock (book value, $13,300) and 532 shares of new no-par-value common stock (book value, $38,703), said shares of new stock, preferred and common, having an aggregate book value of $52,003. Thus, it will be readily seen that the Mercantile Trust Company, as trustee of the trust estate, surrendered to the Steel Company (for cancellation) 532 shares of the old common stock of said corporation, having a book value of $52,003, and received in exchange therefor 133 shares of new preferred stock and 532 shares of new no-par-value common stock of said corporation, having an equivalent book value of $52,003. Furthermore, the combined capital and surplus accounts of the Steel Company, immediately after the stockholders' action on January 26, 1925, aggregated $5,861,499.96, which is the equivalent of the combined capital and surplus accounts of the Steel Company

immediately before the action of the stockholders on January 26, 1925. In other words, the trustee of the trust estate, as the result of the exchange of stock made on May 15, 1925, received and held new stock, preferred and common, of the Steel Company which had no larger or greater aggregate book value than had the old stock which the trustee surrendered to the Steel Company for cancellation; and the Steel Company, on the other hand, made no actual distribution to the trustee, as a stockholder of such corporation, of any part of the surplus earnings of the corporation, but the aggregate amount of the combined capital and surplus accounts of the Steel Company still remained exactly the same as before the surrender and exchange of the old common stock of the corporation for an equivalent (book) value of new stock, preferred and common, of said corporation. That is to say, the trustee stockholder acquired nothing more, and the Steel Company parted with nothing more, measured in pecuniary value, by reason of the transaction of exchanging one form or character of stock for the other, and new, form or character of stock.

Moreover, the action and proceedings had at the meeting of the stockholders of the Scullin Steel Company on January 26, 1925, do not disclose any intention or purpose of the stockholders that any distribution of the surplus earnings of the corporation shall be made, or that any stock dividend shall be declared. In truth, the contrary intention is clearly expressed in the stockholders' resolution, which provides that, after transferring the sum of $60,000 from the surplus account to the capital account of the corporation as full payment for the 60,000 shares of new no-par-value common stock to be presently issued, so that all of the stock, preferred and common, to be presently issued by the Steel Company shall be fully paid and non-assessable, thereupon *"all surplus of the Company remaining on hand,* after deducting the amount to be transferred to capital account as aforesaid, *shall remain as surplus of the Company after such recapitalization."* All that was done, or was intended to be done, at the stockholders' meeting, was to amend the articles of association of the corporation so that the authorized capital stock of the corporation shall be increased; the old par value common stock of the corporation shall be retired and canceled; a new form of stock shall be presently issued, fully paid and non-assessable, to be divided into two classes, preferred and no-par-value common; and a basis of exchange provided, whereby the old par value common stock shall be returned and delivered to the corporation for cancellation in exchange for the new stock, preferred and no-par-value common, to be presently issued by the corporation. No attempt was made by the stockholders of the corporation to declare a dividend; or could the stockholders lawfully have done so

had they so desired or attempted, for the corporation statute of our State seemingly confines and limits that right and power solely to the directors of the corporation. There is no evidence (in the record before us) of any action of the directors of the Scullin Steel Company, undertaking to declare a dividend, either in cash or in stock, or authorizing a distribution of any part of the surplus earnings of the corporation among the stockholders.

The statute (Sec. 10153, R. S. 1919) provides, *inter alia*: "Dividends of the profits made by the corporation may be declared by the trustees or directors thereof every six months, or oftener, as the directors may elect; . . ." Construing such statute, the Springfield Court of Appeals has recently said, in Milligan v. Grocer Co., 207 Mo. App. 472, 484: "Our statute, Section 10153, Revised Statutes 1919, places the power to declare dividends in the board of directors, and we do not understand that the stockholders possess that power. . . . The stockholders could not, even in the most formal way, at a legal stockholders' meeting and by unanimous vote declare a dividend and enforce its payment without the consent of the board of directors. . . . Since the stockholders had no power to declare a dividend in the first instance, they could not, by any form of ratification of the illegal act of another, impart life to that which they were powerless to create. Ratification to be effective must be by the same body invested with the power to act in the first instance. [Clark & Marshall on Corporations, sec. 682; Calumet Paper Co. v. Haskill Show Prtg. Co., 144 Mo. 331, 45 S. W. 1115.]"

Mr. F. T. Stockard, the Supervisor of Corporations in the Corporation Department of this State, in his late (1929) treatise on the Corporation Laws of Missouri, Section 116, says, *inter alia*: "Directors alone under our law can declare dividends. Stockholders alone can increase the authorized capital stock."

A somewhat similar question was recently presented to the Court of Appeals of Maryland for decision, in Whitman v. Consolidated Gas, etc., Co., 148 Md. 90, 101, 129 Atl. 22. In that cause, it appears that the Gas Company had called a special meeting of its stockholders to consider the advisability of adopting the recommendation of its board of directors to amend the charter of the corporation so as: (a) to change the number of shares of the common stock by increasing by four times the then number of shares authorized, and likewise the number of shares issued and outstanding, and to provide that all shares of the common stock authorized, issued, or outstanding, should be shares without any nominal or par value, instead of shares of the par value of $100 each; and (b) to empower the board of directors of the corporation to authorize the issuance, from time to time, of its common stock without par value, and securities convertible into shares of its common stock without

par value, for such consideration as the board of directors may deem advisable. The precise question presented for decision in the cause was whether the contemplated and proposed change in the form of the corporation's stock was, in effect, a stock dividend, and whether the proposed issue of new no-par-value stock, in lieu of the old par-value stock previously outstanding, required the consent and permission of the Public Service Commission of Maryland, under certain statutes of that state. Speaking to the question, the court said: "The appellants, however, have insisted that the transformation of the original issued and outstanding common stock of the appellee into certificates of stock with no par value consolidated the company's capital, surplus and net undivided profits, so that the no-par-value stock which was to be issued in the stead of the former stock with a par value would become the representative of this merged capital, surplus and net profits in the form of capital. In other words, that the change of the former issued and outstanding stock with a par value into stock with no par value was, in effect, although indirect, a stock dividend or capitalization of earnings which converted the surplus and net undivided profits into capital. However, this is not a tenable position, because, in the sense in which it is now being considered, stock, whether evidenced by a certificate of shares, with or without a nominal value, is the total of all the corporate wealth and resources at any given time, subject to all corporate liabilities and obligations. The net capital stock is, consequently, always the difference between the total assets and the total liabilities, and it may be in the form of three items, (1) capital, which represents the original amount contributed in money or property or services; (2) surplus, which represents the earlier undistributed profits; and (3) undivided profits, which are the later, and usually smaller, undistributed profits. The surplus and undivided profits are the increment of capital so defined. . . . There can be no doubt that this dedication of surplus or undivided profits, with its resulting conversion into increased capital, may be accomplished through the medium of a stock dividend of either par or no-par value stock, but it may not be done indirectly or inferentially, but only in compliance with a precise statutory method. [Bagby's Code 1924, art. 23, secs. 43, 46, 392, 39.] The appellee did not intend to merge the original contribution to its capital with its surplus, in the change from a stock with a par value to a stock without a par value. In the first place, the appellee took all of its authorized stock of the par value of $100, whether issued, outstanding, or unissued, and increased the number of the shares fourfold by the subdivision of every authorized original share, and gave for every share of the old stock four shares of the new no-par stock. The new stock was to be absolutely the equivalent of the old, and,

so, the surplus was no more capitalized under the new stock than it had been under the old. Again, the surplus was $4,579,317.29 as of November 19, 1924. If it had been intended to capitalize this by a stock dividend, it would have been necessary to have provided for it in accordance with the statute, and the stock dividend declared would probably have yielded to every holder of four no-par-value shares an additional one no-par share as a stock dividend, after obtaining from the Public Service Commission an order authorizing such issue as a stock dividend. . . . The court has stated its views at length because of the importance of the question and its novelty. Our conclusion is that the contemplated substitution of certificates of shares of no-par stock for the original issue of shares of par stock, at the rate of four for one, is fundamentally a mere alteration in the number and form of the shares of stock of the appellant, that is accomplished by a surrender of the old certificates and their reissue in a new form. The reissue of the original outstanding stock of the appellee in its equivalent in no-par stock does not fall within either the letter or the spirit of any provision of the Public Service Commission Law.''

Bearing in mind that the corporation statute of our State grants to the directors alone (of a domestic corporation) the power and authority to declare dividends, and in view of the particular and precise action of the stockholders of the Scullin Steel Company on January 26, 1925, we are inclined to the conclusion that the action of the stockholders of said corporation amounted only to a mere alteration in the character and form of the corporate stock, involving a surrender of the old stock for cancellation and a reissue of the corporate stock in a new form, and that it was not the intent, purpose, or result, of the stockholders' action to declare a stock dividend, or to make any actual distribution of the surplus and accumulated earnings of the corporation among its stockholders.

II. It cannot be questioned that the 133 shares of the corporate stock of the Scullin Steel Company which originally came into the possession of the Mercantile Trust Company, as trustee, early in the year 1912, as a part of the corpus or capital of the trust estate, have increased and appreciated in value during the administration of the trust estate. In 1912, the original 133 shares of common stock (par value, $100 per share) of the corporation were worth $13,300. The book value of the same stock (represented by 532 shares of common stock; par value, $25 per share), on January 25, 1925, was $52,003. In other words, the original capital investment of $13,300 had increased and appreciated in (book) value to the extent of $38,703 over and above the original capital investment. After the exchange by the

trustee, on May 15, 1925, of the old stock for new stock, preferred and no-par-value common, of the Steel Company, such increase and appreciation in (book) value of the original capital investment of $13,300 was represented by 532 shares of new no-par-value stock of the Steel Company, having a book value of $38,703. Does this increase and appreciation in value of the original capital investment, represented by 532 shares of new no-par-value stock of the Scullin Steel Company, belong to the life beneficiaries of the trust estate, as income of the trust estate, or is it a part of the corpus or capital of the trust estate, which should ultimately go to the remaindermen of the trust estate? The rule or principle of law, in this and other jurisdictions, appears to be well established that such increase and appreciation in value of capital investment is not income, in the sense that the testator used the term "income" in creating the testamentary trust estate, but that such increase and appreciation in value constitutes a part of the corpus of the trust estate, and as such is not distributable among the life beneficiaries of the trust estate.

The Supreme Court of the United States, in the majority opinion of that court, written by Mr. Justice PITNEY, in Eisner v. Macomber, 252 U. S. 189, 207, has said: " 'Income may be defined as the gain derived from capital, from labor, or from both combined,' provided it be understood to include profit gained through a sale or conversion of capital assets, . . . Here we have the essential matter: *not* a gain *accruing to* capital, not a *growth* or *increment* of value *in* the investment; but a gain, a profit, something of exchangeable value *proceeding from* the property, *severed from* the capital however invested or employed, and *coming in*, being '*derived*,' that is, *received* or *drawn by* the recipient for his *separate* use, benefit and disposal;—*that* is income derived from property. Nothing else answers the description." And the learned author of the opinion reiterates (on pages 214-215): "Enrichment through increase in value of capital investment is not income in any proper meaning of the term."

In Lauman v. Foster, 157 Iowa, 275, 135 N. W. 14, l. c. 15, 16, the Supreme Court of Iowa has said: "Any enhancement in the value of stock by reason of withholding the earnings inures entirely to the benefit of the corpus, and the life tenant derives no advantage therefrom. . . . 'Income,' as used in a will bequeathing stock, means the same thing as 'dividend.' [Reed v. Head, 6 Allen (Mass.) 177.] In Spooner v. Phillip, 62 Conn. 62, 24 Atl. 524, 16 L. R. A. 461, it was said: 'The use of the stock seems to be limited to the receipt of dividends and income. The word "dividends," if unqualified, signifies dividends payable in money. The word "income" has a broader meaning, but hardly broad enough to include things

not separated in some way from the principal. It is not synonymous with "increase." The value of the stock may be increased by good management, prospects of business, and the like. But such increase is not income. It may also be increased by an accumulation of surplus; but, so long as that surplus is retained by the corporation, either as surplus or increased stock, it can, in no proper sense, be called "income." It may become producing, but it is not income.' "

Our own court has lately said, in Hayes v. St. Louis Union Trust Co., 317 Mo. 1028, 1043, 298 S. W. 91: "What is the principal or *corpus* of the estate in cases of this kind—is it the corporate *stock* itself, or its *value* at a given time? Undoubtedly, the former. If the trust asset were land, the fact would be clear. . . . For instance, it is uniformly conceded that if corporate stock, so held in trust, increase in value through the accumulation of corporate earnings after the beginning of the trust, and if no dividends are declared, the whole increase belongs to *corpus,* even upon a sale of the stock" (citing numerous authorities). . . . "In the same way, where the new stock is sold by the corporation and it realizes the premium, the profit is regarded as an accretion to the corporate capital and not as income, in measuring the rights of life tenants and remaindermen to the income from stock of the corporation. [Dickinson's Estate, 285 Pa. 449, 453, 132 Atl. 352.] These holdings can be justified on no other theory than that the dividend-yielding *stock, not its value* when the trust began, is the principal or capital (i. e. the corpus) of the trust estate."

Numerous juristic authorities dealing with the subject will be found collated in an exhaustive annotation in 13 American Law Reports, pages 1009 to 1014, inclusive, in which authorities the generally accepted rule of law is evolved and applied that, in the absence of a declaration of corporate dividends, or an actual distribution of accumulated corporate earnings, by severance of such accumulated earnings from the corporate assets, an increase in the value of corporate stock belongs to the remaindermen of a trust estate, and not to the life beneficiaries, although such increase in value of the corporate stock is due to, and arises from, the accumulation and setting aside of the corporate earnings to surplus, or to capital, or to both surplus and capital, of the corporation. [See, also, annotation of authorities in L. R. A. 1915C, 851-852.]

We, therefore, have reached the conclusion that the 532 shares of new no-par-value common stock of the Scullin Steel Company, which are held and administered by the trustee of the trust estate, merely evidence the increase in (book) value of the original 133 shares of common stock of the corporation which came into the possession of the Mercantile Trust Company, as trustee of the trust estate, at the commencement of the administration of the trust in

1912, and that such increase and appreciation in value of the original capital investment is a part of the corpus or capital of the trust estate, and belongs to the remaindermen, and not to the life beneficiaries, of said estate.

III. But, assuming that the 532 shares of new no-par-value common stock of the Steel Company received by the trustee of the trust estate on May 15, 1925, constitute and represent, in legal effect, a stock dividend of the corporation, as is insistently contended by the plaintiffs-respondents herein, nevertheless, such stock, under the recent ruling of our court in Hayes v. St. Louis Union Trust Company, 317 Mo. 1028, 298 S. W. 91, is a part of the corpus of the trust estate, and is not income of the trust estate distributable to the life beneficiaries. In the Hayes case, we said (l. c. 1045, 1046): "A stock dividend is not in any true sense a dividend at all. The latter implies a *division,* a severance from the corporate assets of the subject of the dividend, and a distribution thereof among the stockholders. [McLaran v. Crescent Planing Mill Co., 117 Mo. App. 40, 93 S. W. 819; 14 C. J. 798; 5 Thompson on Corporations (2 Ed.) p. 84, sec. 5270.] The issuance of a stock dividend is, in its last analysis, nothing more than an incident or process in corporation bookkeeping. The important step is the increasing of the fixed capital of the corporation. The outstanding shares of stock are increased to balance, either by adding to their number or raising their par value. When the stock has no par value, it seems even this is unnecessary. Nothing is taken from the corporation. Nothing is given to the stockholders —rather the contrary, for corporate profits theretofore available for distribution in dividends are permanently appropriated to its fixed capital. The title to all corporate property remains in the corporation as before. The proportional interest of each stockholder continues the same; the only change is in the evidence of his interest in the corporation—that is, the number of his shares of stock is increased and the book value of each share correspondingly decreased, or the face value of his shares of stock is raised to or toward what their intrinsic value was before. . . . The basis of our ruling in this case is that the stock dividends were not income of the trust estate, but an accretion to the *corpus,* because of their nature, and because they represent no money or property severed from capital assets."

The respondents insist that the ruling of this court in the Hayes case, and the rule or principle of law announced therein (and an-

338

nounced likewise in the several decisions of the courts of last re-
sort in other and foreign jurisdictions, which decisions are
approvingly cited and followed in the Hayes case), is ar-
bitrary, unfair and inequitable, in that the application of
the announced rule "subordinates the question of the rights of life
beneficiaries and remaindermen to an exaggerated consideration of
the effect of stock dividends upon the corporation and the trustee;"
usurps the lawful jurisdiction of the judiciary to determine what
corporate earnings and profits shall constitute income, and what shall
constitute corpus, of a trust estate, by substituting corporate action
for judicial investigation and decision; and ignores the true in-
tention of the testator and creator of the trust, in derogation of the
common law, and of the statute of this State (Sec. 555, R. S. 1919),
which requires that "all courts, and others concerned in the execu-
tion of last wills shall have due regard to the directions of the will,
and the true intent and meaning of the testator, in all matters
brought before them." Wherefore, this court is urged by the re-
spondents herein to overrule our decision and opinion in the Hayes
case.

The Hayes case was twice argued in this Division of this court,
and not only did this court have the aid of exhaustive printed briefs
and arguments of able counsel representing the respective parties to
that cause, but this court was further aided by separate and able
briefs filed, with leave of court, by three *amici curiae*. The Hayes
case, because of the novelty and importance of the single question
presented, and because such question was one of first impression in
this State, had our most thorough and careful consideration, both
upon original submission and upon motion for rehearing. The sev-
eral theories, doctrines, or "rules" (so-called), as variously stated
and applied in other jurisdictions, and bearing upon the question
presented for our decision, were fully considered, analyzed and dis-
cussed in the opinion rendered, and concurred in by all of the mem-
bers of this Division of our court, in the Hayes case; and this court
therein adopted, as more nearly correct, the rule, or doctrine, that
stock dividends are not "income" of the trust estate, in any true
or accurate sense and meaning of that term, but are an accretion to
the corpus or capital of the trust estate, and, as such, are not dis-
tributable among the life beneficiaries of the trust estate, unless the
contrary intention of the creator of the trust is to be found ex-
pressed in the written instrument, testamentary or otherwise, cre-
ating the trust, and providing for its administration and dispo-
sition by the trustee; or, if the language used by the creator of the
trust in the written instrument be ambiguous and uncertain, then as
the actual intention of the creator of the trust may be ascertained
from the language used as aided and illuminated by competent and

material extrinsic evidence concerning the subjects and objects of the bequests. We are satisfied with the correctness of the reasoning and conclusion expressed and announced in the Hayes case, supra, and perceive no good reason for departing from the rule of law announced in that case, or for overruling our recent opinion therein. The rule or doctrine of law announced in the Hayes case has been lately reaffirmed by this Division of our court in MacDonald v. O'Day, 319 Mo. 857, 864, 5 S. W. (2d) 374.

It is claimed by the plaintiffs-respondents, however, that the present case is distinguishable from the Hayes case upon the ground and distinction that the remaindermen of the trust estate in the Hayes case were the living grandchildren of the testator and creator of the trust estate, and so were actually known to the testator, whereas the remaindermen in the present case are the unknown, unborn, remote collateral kin of the testator, Edward S. Robert. Respondents argue (quoting from their brief): "It cannot be conceived that the testator had in mind the preservation and upbuilding of a corpus, and keeping it intact and increasing for years and years, simply to keep an estate alive, to be ultimately used by remote collateral kin who would know of him simply as a name. There is not a single shadow of a suggestion in the will (of Edward S. Robert) that the testator intended to have preserved intact, or increased, a fund or corpus for the benefit of one, mayhap, thereafter to be born."

However, we find no ambiguity or uncertainty in the language used by the testator in expressing his intention respecting either the beneficiaries of the trust estate, or the kind or character of property bequeathed to the respective beneficiaries, for life or in remainder, of such estate. The testator, by his own testamentary language, has clearly and certainly directed the trustee to pay over to the respective life beneficiaries, in certain designated proportions, the "income," or the "net income," of the trust estate, and to deliver the "corpus" of said estate to certain designated remaindermen in certain designated proportions. At the time of the execution of his will, the testator well knew that the remaindermen, or some of them at least, were unborn; and he furthermore provided in his will that, in the event that the designated remaindermen should not come into being, or should die before the ultimate determination and distribution of the trust estate, the designated proportionate shares of the corpus of the trust estate bequeathed to such remaindermen "shall go to my right heirs." There is no specific expression of the intention of the testator to be found in the will that the corporate stock in controversy should go to the life beneficiaries of the trust estate, as income therefrom, whether such

corporate stock be deemed to evidence an increase in value of the original capital investment, or whether it be deemed to evidence, and to constitute, a stock dividend; and such intention of the testator is not derivable from the evidence *aliunde* the will; furthermore, the juristic authorities all agree that mere surmises and conjectures respecting the testator's intention cannot override the plain and unambiguous language of his will, for the courts cannot make a will for the testator. We do not find the present case to be distinguishable from the Hayes case upon any distinguishing ground of a different degree of relationship of the remaindermen to the testator, or upon any real or substantial difference in the provisions of the wills of the respective testators in the Hayes case and in the case now before us for decision.

Again, the plaintiffs-respondents contend that the present case is distinguishable from the Hayes case upon the ground that the corporate stock involved in the present case is that of a Missouri (domestic) corporation, while the corporate stock involved in the Hayes case was that of a foreign corporation; and, therefore, it is urged that our opinion in the Hayes case proceeded upon the theory that such opinion was not dependent upon, or affected by, any controlling statute of this State respecting the corporate stock involved. The corporation statute of our State (Sec. 9743, R. S. 1919), which is applicable to the Scullin Steel Company, a Missouri corporation, reads, in part, as follows: "The stock of every company formed under this article shall be deemed personal estate, . . ." Hence, it is argued by respondents that, inasmuch as the opinion of this court in the Hayes case recognizes, accepts and follows the rule or doctrine announced by the courts of last resort in Massachusetts, and in other jurisdictions, to the effect that "cash or *property dividends belong to income,* and stock dividends (belong) to *corpus,*" and inasmuch as under our statute, supra, the stock of the Scullin Steel Company, a Missouri corporation, must be deemed to be *personal property,* therefore any dividend or distribution of stock of the Steel Company is a distribution of property, and constitutes a *property dividend,* which, under our ruling and decision in the Hayes case, "belongs to income," and is properly distributable among the life beneficiaries of the trust estate. There might be force and substance in such argument if the Steel Company, in the present case, had actually *severed* a portion of the surplus earnings of the corporation (of an amount equal to the book value of the new no-par-value common stock of the corporation) from the corporate assets, and so had made an actual *distribution of the surplus earnings* of the corporation among its stockholders. But, as we have heretofore clearly demonstrated, there has been no *severance* of the surplus, or accumulated and undistributed, earnings of the corporation from the corporate assets, and no actual *distribution* of such accumulated

corporate earnings among the stockholders of the Scullin Steel Company. Nothing was actually taken from the corporation, and nothing was actually given to the stockholders. Each and every stockholder of the corporation, including the Mercantile Trust Company, trustee of the trust estate created by Edward S. Robert, received merely a different kind or character of (new) stock in exchange for the old stock surrendered by the stockholders for cancellation, and the proportional interest of each stockholder of the corporation in the corporate assets continued and remained exactly the same as before the exchange of stock. Thus, the facts in the present case are not essentially different from the facts upon which the Hayes case was ruled and decided by this court.

The respondents furthermore claim that the new stock received by the trustee, in lieu of the surrendered and canceled stock of the Steel Company, is of a wholly different class and character than the surrendered stock originally held by the trustee, and therefore the present case falls within the (majority) holding of the Supreme Court of the United States announced in Marr v. United States, 268 U. S. 536. The cited case was one wherein the plaintiff, Marr, sought to recover from the United States a tax imposed and collected upon the income of Marr for the year 1916, which tax Marr had paid under protest. It appeared therein that Marr had been a stockholder in a New Jersey corporation, and had exchanged, during the year 1916, all of his stock holdings in such New Jersey corporation for stock in a Delaware corporation, receiving in exchange for every share of common stock of the New Jersey corporation, five shares of common stock of the Delaware corporation, and for every share of the preferred stock of the New Jersey corporation, one and one-third shares of preferred stock of the Delaware corporation. The Delaware corporation, by virtue of the exchange of its corporate stock made with the several stockholders of the New Jersey corporation, thus became the owner of all the outstanding stock, common and preferred, of the New Jersey corporation, and thereupon took a transfer of the corporate assets of the New Jersey corporation, and assumed its liabilities; whereupon, the New Jersey corporation was dissolved. By the exchange of corporate stock, Marr realized a gain or profit from the transaction which was financially the equivalent of $324,466 in cash, upon which gain or profit the income tax was imposed and collected by the United States. It was ruled by a majority of the court (four of the nine Justices dissenting), in substance and effect, that the transaction of exchange had resulted in an actual distribution of the accumulated or surplus corporate earnings of the New Jersey corporation, represented by stock in the Delaware corporation, from which distribution of accumulated or surplus corporate earnings of the New

Jersey corporation Marr had received a pecuniary profit or gain of $324,466, and that the case at bar was "*not* one in which, after the distribution, the stockholders have the same proportional interest of the same kind in essentially the same corporation." Obviously, the controlling facts in the Marr case are so different from the controlling facts in the present case that the majority ruling of the Federal Supreme Court in the Marr case is not to be deemed persuasive in the determination of the present case.

It follows, therefore, that the judgment and decree of the circuit court must be reversed, and that the cause should be remanded with directions to the circuit court to enter a decree and judgment requiring the Mercantile Trust Company, as trustee of the trust estate under the will of Edward S. Robert, to account for and administer the 532 shares of no-par-value common stock of the Scullin Steel Company, together with the 133 shares of preferred stock of said corporation, as corpus of the trust estate. It is so ordered. *Lindsay* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur.