**RANDOLPH et al. v. COMMISSIONER OF INTERNAL REVENUE.**

**HELVERING, Com'r of Internal Revenue, v. RANDOLPH et al.**

Nos. 9930, 10055.

Circuit Court of Appeals, Eighth Circuit.

Feb. 27, 1935.

Rehearing Denied April 10, 1935.

Abraham Lowenhaupt, of St. Louis, Mo. (F. M. Curlee and Stanley S. Waite, both of St. Louis, Mo., on the brief), for Virgil P. Randolph, Jr., and another.

John MacC. Hudson, Sp. Asst. to Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for the Commissioner of Internal Revenue.

Before GARDNER, SANBORN, and VAN VALKENBURGH, Circuit Judges.

SANBORN, Circuit Judge.

These are petitions to review an order of the Board of Tax Appeals redetermining deficiencies in the income taxes of Shelby H. Curlee, as trustee, for the years 1926 and 1927. Curlee v. Commissioner of Internal Revenue, 28 B. T. A. 773. For the year 1926, the Commissioner had determined a deficiency of $10,280.39, which the Board, upon appeal, reduced to $5,027.52. The Commissioner's petition challenges the Board's ruling in this regard. For the year 1927 the deficiency as determined by the Commissioner was $47,769.61, and this was sustained by the Board. Virgil P. Randolph, Jr., and First & Merchants' National Bank of Richmond, Va., who succeeded Shelby H. Curlee as trustees, challenge the ruling of the Board sustaining the deficiency for the year 1927. Before the Board, the proceedings were heard together upon a stipulation of facts covering both appeals, and the petitions for review were consolidated by this court.

The undisputed facts are briefly these: Virgil P. Randolph, as trustor, on February 1, 1922, transferred 865 shares of the common stock of the Curlee Clothing Company, a Missouri corporation, to Shelby H. Curlee, as trustee. The trustees, both original and successor, will be referred to as "the taxpayer." The trust agreement provided that the trustor should have the income from the trust for life, and that thereafter income and corpus should go to designated beneficiaries. Of the 865 shares of stock, 600 were acquired before March 1, 1913, and their value on that date was $200 a share; 252 shares were received as a stock dividend in January, 1914; and 13 shares were acquired at a cost of $225 a share upon a ratable distribution to stockholders in 1919. On June 16, 1925, the Missouri corporation, which will be referred to as the "old company," was reorganized as a Delaware corporation, which will be referred to as the "new company." The old company had a capital of $537,000, evidenced by 5,370 shares of $100 par value common stock, and an earned surplus of $4,605,118.51, all of which had been accumulated since March 1, 1913. The new company took over the business and assets and assumed the obligations of the old company. For each share of stock of the old company held by them, the stockholders of that company received one share of the no par value common stock of the new company. The new company set up no surplus account, but reflected the value of its assets in its capital account. In January, 1926, the new company amended its charter. It retired its no par value common stock, and substituted therefor common stock of the par value of $100 a share, and 25,000 shares of $100 par value preferred. The new stock, both preferred and common, was issued ratably to the stockholders of the new company upon surrender of their old no par value shares of common. The taxpayer received for 865 shares of no par value common stock 865 shares of the new $100 par value common stock and 4,026 shares of the new preferred stock, together with $57.50 in cash in lieu of a fractional share of preferred. The new common stock was then worth $491.50 a share, and the new preferred was worth $100 a share. In 1926 the taxpayer sold 225 shares of the new $100 par value common stock for cash at $491.50 a share, and exchanged 240 shares of such common stock for 1,179 shares of preferred stock. The preferred stock received in exchange for the 240 shares of common will be referred to as the "purchased preferred," and the 4,026 shares received by the taxpayer on surrender of its no par value common will be referred to as the "substituted preferred." In 1927 the new company redeemed for cash and retired all of its outstanding preferred stock at $105 a share, one-half on January 1, 1927, and the balance on July 1, 1927. It charged $100 of the $105 paid for the retirement of each share of preferred to its capital account, and the $5 premium to surplus account. From the time of the formation of the new company in 1925 to September 30, 1926, it had earned $716,263.85, and for the year ending September 30, 1927, $551,515.35. Cash dividends were paid to stockholders upon both common and preferred stock outstanding during 1926 and 1927. At the time of the redemption of the

474

preferred stock in 1927, the taxpayer had 400 shares of common and 5,205 shares of preferred, of which 1,179 shares were "purchased preferred." One-half of all of the taxpayer's preferred stock was redeemed January 1, 1927, and the balance on July 1, 1927.

The Commissioner and the Board were faced with two problems:

(1) What was the taxable gain resulting from the sale by the taxpayer in 1926 of 225 shares of par value common stock of the new company for $110,587.50?

(2) What taxable gain, if any, resulted to the taxpayer in 1927 from the redemption of the preferred stock received from the new company?

The Commissioner was of the opinion that the substituted preferred stock received by the taxpayer in 1926 was to be treated as a stock dividend, and that, in order to determine the taxable gain resulting from the sale of the $100 par value common stock in 1926, it was necessary to ascertain the cost or 1913 value of the common stock held by the trust for which the new common and preferred were substituted in 1926, and to allocate that cost or value to both classes of the substituted stock upon the basis of their relative value, using $491.50 a share as the value of the common, and $100 a share as the value of the preferred. This by reason of Article 1599 of Treasury Regulations 69, which provides: "(2) Where the stock distributed in reorganization is in whole or in part of a character or preference materially different from the stock in respect of which the distribution is made, the cost or other basis of the old shares of stock shall be divided between such old stock and the new stock in proportion, as nearly as may be, to the respective values of each class of stock, old and new, at the time the new shares of stock are distributed, and the basis of each share of stock will be the quotient of the cost or other basis of the class with which such share belongs, divided by the number of shares in the class. The portion of the cost or other basis of the old shares of stock to be attributed to the shares of new stock shall in no case exceed the fair market value of such shares as of the time of their distribution."

Upon the Commissioner's basis of determination, the deficiency in taxes was $10,280.39.

As to the second question—the redemption of the preferred stock in 1927—the Commissioner was of the opinion that such redemption of the substituted preferred stock was to be regarded as "essentially equivalent to the distribution of a taxable dividend," but that the redemption of the purchased preferred stock was not to be so regarded. In reaching his conclusion, the Commissioner relied upon section 201 (a) of the Revenue Act of 1926, c. 27, 44 Stat. 9, 10, 26 USCA § 932 (a), which provides: "The term 'dividend' when used in this title [chapter] * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913." And upon paragraph (g) of the same section (26 USCA § 932 (g), which provides: "If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend."

The Board was of the opinion that the basis used by the Commissioner for the year 1926 in determining the gain resulting from the sale of common stock was improper for the reason that, while it appeared that the substituted preferred stock was a stock dividend, it was later shown, by events transpiring in 1927, that, for tax purposes, the issuance of such stock was to be regarded as nothing more than a part of a plan to distribute to the stockholders the accumulated earnings of the company; and that, since the law required the amount paid in redemption of the preferred stock in 1927 to be treated as a taxable dividend, the issuance of the substituted preferred stock in 1926 ought not to be treated as a stock dividend. Therefore, the Board held that the cost or 1913 value of the original stock should not be allocated to the common and preferred stock substituted for it, but should be assigned to the common stock alone. The Board's theory resulted in an increase in the cost or value of the common stock sold, and hence in a reduction of the deficiency for the year 1926 to $5,027.52.

The Commissioner contends that, under the law, he was required to treat the preferred stock issued upon surrender of the

common stock in 1926 as an actual stock dividend and to make the allocation which he made, for the purpose of determining the taxable gain resulting from the sale of common stock, and that the redemption and retirement of the preferred stock in 1927 could not affect the situation as it existed in 1926.

■ While there is much force in the Commissioner's contention, since, under the strict letter of Article 1599 of Treasury Regulations 69, he was required to apportion "the cost or other basis" of the old shares between the new common and the new preferred exchanged for the old shares, in determining gain from the sales of the new stock, it seems to us, as it did to the Board, that if the issuance of this stock in 1926 and its redemption in 1927 made the amount paid for redemption of the preferred the equivalent of a taxable dividend, then the issuance of the preferred stock in 1926 should be regarded, not as an actual stock dividend, but as merely the evidence of the right of the holder to participate in the distribution of earnings later to be made. If the substituted preferred is to be regarded for tax purposes in 1927 as mere scenery, there would seem to be no reason for treating it as anything more than that for tax purposes in 1926, although it then appeared to be an actual stock dividend. After all, the regulation must be regarded as dealing with actualities and not fictions. "The government will not resort to sharp practice, nor invoke technical construction or fiction, which will manifestly thwart the good-faith intention of its taxpayers, for the purpose of visiting a tax burden upon one who in fact did not, except by construction, derive any beneficial income from the transaction." Bettendorf v. Commissioner of Internal Revenue (C. C. A. 8) 49 F.(2d) 173, 176.

■ That brings us to the next question raised by the taxpayer. Concededly, income which, under the terms of a trust, is distributable by the trustee, is not taxable to him, but to the beneficiary. Section 219, Revenue Act of 1926 (section 960, title 26, U. S. C. Appendix [26 USCA § 960 note]); Article 342, Regulations 69; Helvering v. Butterworth et al., 290 U. S. 365, 369, 54 S. Ct. 221, 78 L. Ed. 365; Willcuts v. Ordway et al. (C. C. A. 8) 19 F.(2d) 917.

The taxpayer claims that if the amount paid in redemption of the preferred stock in 1927 is to be treated as a taxable dividend, then it was distributable income of the trust, and not taxable to the trustee; and

that, on the other hand, if it was not such income, then it was not subject to a tax at all.

That stock dividends are not ordinarily distributable as income to the beneficiaries of a trust appears to be well settled. Buder et al. v. Franz et al. (C. C. A. 8) 27 F.(2d) 101, 113; Gibbons v. Mahon, 136 U. S. 549, 558, 559, 10 S. Ct. 1057, 34 L. Ed. 525; Towne v. Eisner, 245 U. S. 418, 426, 38 S. Ct. 158, 62 L. Ed. 372, L. R. A. 1918D, 254; Pierrepont v. Fidelity-Philadelphia Trust Co. et al. (D. C. E. D. Pa.) 32 F.(2d) 608; Robert et al. v. Mercantile Trust Co. et al., 324 Mo. 314, 23 S.W.(2d) 32, 41. Had the trust agreement here involved been silent as to stock dividends or distributions, the trustee could not have treated the amount received in redemption of any of the preferred stock as distributable income of the trust, even though the redemption was made out of funds which could have been used by the company for the payment of taxable dividends. So far as the trust was concerned, the issuance of the preferred stock in 1926 was a stock dividend, and the fact that, under section 201 (g), 26 USCA § 932 (g), its redemption in 1927 was to be treated as the essential equivalent of a taxable dividend and therefore taxable income of the trust, would not change the situation so far as the trust was concerned. The trustee had received an accession to the corpus of the trust, which, under the law, was to be treated as a taxable gain.

The trust instrument, however, was not silent with respect to stock dividends. It conveyed to the trustee the 865 shares of stock in the Curlee Clothing Company "together with any additional stock which may hereafter be issued as stock dividends thereon."

The intention of the trustor is, of course, to be determined from the trust instrument. State Sav. Loan & Trust Co. v. Commissioner of Internal Revenue (C. C. A. 7) 63 F.(2d) 482, 484; Hubbell v. Burnet (C. C. A. 8) 46 F.(2d) 446, 448; Highland Park Mfg. Co. v. Steele et al. (C. C. A. 4) 232 F. 10, 25–27; Carnahan et al. v. Peabody et al. (D. C. S. D. N. Y.) 29 F.(2d) 412, 415.

By the express terms of the trust instrument itself, the substituted preferred stock became a part of the corpus of the trust, and obviously the cash received in redemption of it was not income of the trust which could be distributed. Had the trust agreement provided that all moneys received in re-

demption of any stock dividend, which were the essential equivalent of a taxable dividend, should be treated as income of the trust and distributed to the beneficiaries, the situation would be different.

 The question as to whether a distribution in connection with the cancellation or redemption of stock is essentially equivalent to a distribution of a taxable dividend is one of fact dependent upon the circumstances of each case. Commissioner v. Babson (C. C. A. 7) 70 F.(2d) 304, 306, 307. The determination of the Board of Tax Appeals of a question of fact will not be examined by this court beyond ascertaining whether its finding is sustained by substantial evidence. Phillips et al. v. Commissioner, 283 U. S. 589, 600, 51 S. Ct. 608, 75 L. Ed. 1289; Twin City Tile & Marble Co. v. Commissioner (C. C. A. 8) 32 F.(2d) 229; Franciscus Realty Co. v. Commissioner (C. C. A. 8) 39 F.(2d) 583, 584; Tunnel R. R. of St. Louis v. Commissioner (C. C. A. 8) 61 F.(2d) 166, 172. And even though the evidence before the Board is undisputed, the finding of the Board will not be disturbed by this court if different inferences may reasonably be drawn from such evidence. Helvering v. Ames (C. C. A. 8) 71 F.(2d) 939, 943.

 The evidence before the Board is not only entirely consistent with the hypothesis that the new company, in issuing preferred stock and in redeeming such stock from earnings accumulated since March 1, 1913, within the space of a few months, did so for the purpose of making distribution to its stockholders of surplus earnings, but seems inconsistent with any other reasonable hypothesis.

There is no merit in the contention of the taxpayer that the redemption of the substituted preferred stock may not be regarded as the equivalent of a taxable dividend because, between the time when the preferred stock was issued and the time when it was redeemed, many stockholders had sold their preferred, so that much of the stock was redeemed from persons who had acquired it from others. We are concerned here merely with the taxable gains of this taxpayer. The trust had received the equivalent of a taxable dividend. What the character of the payments to other holders of preferred stock may have been is of no consequence.

The order of the Board of Tax Appeals is affirmed.